George Washington HANN, Appellant,

v.

The STATE of Texas, Appellee.

No. 2–88–034–CR.

Court of Appeals of Texas, Fort Worth.

June 1, 1989.

Rehearing Denied June 29, 1989.

Jack H. Garrett, Fort Worth, for appellant.

Jerry Cobb, Criminal Dist. Atty. and Gwinda Burns, Asst. Dist. Atty., Denton, for appellee.

Before WEAVER, C.J., and JOE SPURLOCK, II and KELTNER, JJ.

## OPINION

WEAVER, Chief Justice.

Appellant, George Washington Hann, was convicted by the trial court of criminal trespass. *See* TEX.PENAL CODE ANN. sec. 30.05 (Vernon 1989). The judge set punishment at thirty days in jail and a $500.00 fine.

We reverse and acquit.

Appellant rented a hangar at Aero–Valley Airport in Denton County. In order to get from the runway to his hangar, appellant had to cross certain property (the "transient area") to which the complaining witness, Glen Hyde, claimed the right of possession to the exclusion of appellant.

In his sole point of error, appellant asserts that the evidence was insufficient to support a finding of guilt beyond a reasonable doubt.

One element of the offense of criminal trespass is entry on the property of another without effective consent. TEX.PENAL CODE ANN. sec. 30.05(a). Effective consent includes consent by a person legally authorized to act for the owner. TEX.PENAL CODE ANN. sec. 1.07(a)(12) (Vernon 1974).

The alleged trespass by appellant occurred on April 20, 1987, and constituted only one of many transactions regarding access by appellant and others to and across the transient area. On this occasion appellant, while taxiing his airplane from the runway back to his hangar, crossed the transient area. Glen Hyde stopped him in the transient area by pulling his truck in front of appellant's plane. Hyde, who had a pistol on him at the time, called the Denton County Sheriff's office. The responding officer placed appellant under arrest at the scene and filed the trespass charge.

The evidence showed that "no trespassing" signs (placed on the premises by Hyde) were visible to appellant, and that Hyde had previously advised appellant that he had no access to the transient area.

The Aero–Valley Airport was constructed around 1970 by Edna Gardner Whyte on thirty-four acres of her land. She later bought more land northeast of the original tract and made additional improvements, including extensions to the runway and taxiways.

In 1980 Whyte sold to Gene Varner the runway and taxiways together with a portion of the land, including the portion where the transient area is located. Part of the purchase price was carried by a note from Varner to Whyte and secured by a vendor's lien and deed of trust. In the deed to Varner, Whyte reserved certain easements and rights for access to the runway from her property located in the northeast corner of the airport. In 1982 Hyde–Way, Inc., (apparently owned or controlled by Hyde) acquired all of Varner's interest and assumed the note owed by Varner to Whyte.

Sometime prior to October 19, 1983, Hyde, or his corporation, purchased 119 acres located west of the runway and referred to as the Northwest Development Addition. Misunderstandings and disputes arose between Whyte and Hyde concerning obligations, rights, and other matters pertaining to the airport. On October 19, 1983, a settlement agreement was entered into between Whyte and Hyde–Way, Inc. and Glen Hyde, individually, as "Hyde," and by which Hyde agreed to convey to Whyte certain real property located on the Northwest Development Addition. This conveyance was apparently in payment of the balance owed to Whyte under the 1980 note from Varner. This conveyance also included ten hangars located on the land, one of which was being used by appellant as a tenant of Whyte at the time of his arrest. Whyte was then still the owner of the hangar and told the appellant that he had access to the runway across the transient area under the terms of the settlement agreement between Whyte and Hyde.

Under that agreement, Whyte agreed to quit claim to Hyde all rights and reservations saved and excepted in her deed to Varner:

[E]xcept that Whyte shall have the right to convey easements to persons who are tenants or heirs or assigns of land she

presently owns or will own in the future within the confines of the Aero–Valley Airport as it now exists, including the residential lots in the Northeast corner of said airport. Whyte agrees however that on the sale of any of the hangars granted to her in this agreement or purchased by her in the Northwest Development Addition she or her buyers will execute the Runway License Agreement now required by Hyde from purchasers in the Northwest Development Addition.

On February 5, 1987, Hyde sold whatever property he owned, including the transient area, to a Nevada mining corporation. At the time appellant was arrested for trespassing, on April 20, 1987, Hyde owned only a month-to-month tenancy under a verbal lease from the mining company.

The testimony shows that there has been a long history of disputes between Whyte and Hyde over their airport transactions, and that they had been in civil litigation for over two years before appellant was convicted in this case. Such litigation apparently did not involve the interpretation of the above quoted language from the settlement agreement insofar as it was determinative of appellant's right to cross the transient area on April 20, 1987. Appellant urges that as Whyte's tenant he had access across the transient area on the date in question by virtue of the easement rights which Whyte was authorized to convey under the settlement agreement. Hyde denied that appellant had access under any such easement. In the alternative, appellant argues that such provisions of the settlement agreement are ambiguous and fail to negate appellant's right of access to the transient area as Whyte's tenant. The State argues that the settlement agreement requires appellant, as Whyte's tenant, to pay a runway license fee to Hyde before he is entitled to access to the transient area. Appellant did not acquire such license from Hyde and claims that none was necessary for his access to the transient area since he occupied his hangar as Whyte's tenant and since Whyte had not sold the hangar subsequent to the settlement agreement.

While we do not here speculate on the ultimate outcome of any civil suit between the parties concerning the interpretation of the settlement agreement, we do find, for the purpose of this appeal, that a bona fide dispute exists between appellant and Hyde as to whether appellant had rights of access to the property under the settlement agreement, and we further find that the language of the settlement agreement is ambiguous or unclear concerning the respective rights of the appellant and Hyde to the transient area. We note that the State's attorney, during final argument to the trial court, respecting Hyde's right to deny access to the property to appellant, and in referring to the settlement agreement, stated that "[i]t doesn't show the Court one way or the other whether he has or does not have the right." We concur.

As stated above, we find that a bona fide dispute did exist between the appellant and Hyde regarding appellant's access to the property. In this respect, appellant cites *Bryant v. State*, 627 S.W.2d 180, 183 (Tex.Crim.App.1982) and *Cox v. State*, 658 S.W.2d 668, 671 (Tex.App.—Dallas 1983, pet. ref'd) for the proposition that in a theft case of personalty a conviction cannot be upheld if ownership of the property is disputed between the complaining witness and the defendant. We find this to be a proper statement of the law regarding disputed ownership of personalty in a theft case. We believe the application of such rule to be appropriate where the right to access to the property is in dispute in a criminal trespass conviction. *See Allsup v. State*, 62 S.W. 1062 (Tex.Crim.App.1901) (case involving cutting timber on land of another). The ownership of the land was in dispute in that case, and the court of criminal appeals, in reversing the conviction, used the following language:

> In a civil proceeding there may be extreme doubt as to whom this land really belongs. Certainly this record leaves it in doubt. It is evident that appellant believed the land to be his, and when the controversy came between himself and Boyd, and when Boyd tore down his fencing, he applied to the county surveyor to

settle the disputed boundary between them by identifying the original lines. We are unwilling to sanction this verdict on the testimony before us.

*Id.* at 1062.

In reviewing the sufficiency of the evidence in the light most favorable to the judgment, we find that any rational trier of the facts could not have found beyond a reasonable doubt that appellant's entry on the property was without effective consent. Appellant's point of error is sustained. We reverse and this cause is remanded to the trial court with an order to enter a judgment of acquittal.