826 S.W.2d 627 (1992)
Gerald Wayne STOCKMAN, Appellant,
v.
The STATE of Texas, Appellee.
No. 05-90-00830-CR.
Court of Appeals of Texas, Dallas.
January 8, 1992.
*628 Lawrence B. Mitchell, Dallas, for appellant.
Pamela Sullivan Berdanier, Dallas, for appellee.
Before ENOCH, C.J., and WHITHAM and THOMAS, JJ.

OPINION
WHITHAM, Justice.
Appellant, Gerald Wayne Stockman, appeals from a conviction for the lesser included offense of theft over $750.00, but less than $20,000.00. Although the jury determined guilt, the trial court assessed punishment at ten years' confinement, probated for a period of ten years. In his sole point of error, appellant contends that the evidence is insufficient to support the verdict. We agree. We conclude *629 that the evidence is insufficient to show a crime of theft in that the evidence shows at most a civil dispute arising out of a home building contract between complainant, as owner, and appellant, as builder. Because the evidence is insufficient to show theft, we conclude that appellant was sentenced to ten years in the penitentiary as the result of this civil dispute. In a theft case of personalty, a conviction cannot be upheld if ownership of the property is disputed between the complaining witness and the defendant. Hann v. State, 111 S.W.2d 731, 733 (Tex.App.-Fort Worth 1989, no pet.). The present case is a theft case of personalty, and ownership of the money is disputed between the complaining homeowner and the defendant homebuilder. Accordingly, we sustain appellant's sole point of error, reverse the trial court's judgment and render a judgment of acquittal.
We cannot agree that the offense of theft over $750.00, but less than $20,000.00, occurs when parties to a fixed-price homeconstruction contract disagree as to the terms and provisions of the contract between them. We know that such a disagreement is the basis of the asserted offense because at trial, the parties disagreed as to their understanding of when appellant could take his profit under the contract. Complainant and her banker testified that appellant did not earn his profit until he completed construction and that neither of them had given appellant permission to use the funds in the account for any purpose unconnected with the construction. Appellant testified that he earned and could take his profit as the construction progressed and admitted to writing personal checks out of the construction account. The State focuses upon an advance of money from complainant to appellant for the purchase of appliances. Indeed, as will be seen from the exchange of letters between complainant's attorney and appellant's attorney, the appliance advance appears to be one of the linchpins of this civil dispute. Therefore, we need to consider this appliance advance in more detail.
As to the appliance advance, the record reflects that appellant "asked" for $3,000.00 to buy appliances, for reasons unexplained, and unbeknownst to appellant, until he received his "draw slip," the bank advanced appellant "the entire amount, not the $3,000.00 that [appellant] requested." The record does not tell us the figure of the "entire amount" to which appellant referred. Later in this opinion we will show two other "appliance" figures:
(1) $5,000.00 found in a letter from complainant's attorney to appellant, and
(2) $7,000.00 as a contractually provided allowance for kitchen appliances.
Therefore, we do not know if the State complains of a $3,000.00 appropriation, a $5,000.00 appropriation, or a $7,000.00 appropriation. Also, later in this opinion, we will quote the pertinent parts of both the indictment and the trial court's charge. None of these three figures appears in the indictment or the charge.
Next we note a disputed fact; to wit: whether complainant "ran" appellant off the job before he was able to complete the home under construction. In this connection, the record reflects correspondence between complainant's attorney and appellant's attorney. By letter of April 27, 1987, complainant's attorney wrote appellant:
Based upon all of the foregoing, [complainant has] elected to consider you in substantial violation of your contract with [her]. Therefore, unless within seven (7) days from the date of this letter, you (1) have demonstrated to the reasonable satisfaction of the [complainant] your ability to finance the cost to complete performance which is in excess of the unpaid construction price, (2) have provided to [complainant] a written receipt from Wilson Plywood Company evidencing payment in full of all sums due to it through April 30, 1987, and (3) have refunded to [complainant] the amount drawn for appliances, then [complainant] will exercise her rights under the contracts to notice termination thereof.
I urge you to give this matter your immediate attention and to consult with legal counsel. *630 (emphasis added;. Thereafter, by letter 01 May 27, 1987, complainant's attorney wrote appellant advising appellant that within seven days complainant will terminate her contractual relationships with appellant. We add that this letter is silent as to criminal complaints or charges against appellant. Nowhere does complainant's attorney assert theft of money by appellant. Indeed, complainant's attorney's letter of April 27, 1987, demands "[refund] ... of" amount drawn for appliances. Hence, in the present case, refusal to "refund" results in conviction for theft.
In any event, on May 12, 1987, appellant's attorney replied to complainant's attorney as follows:
As you are aware, you contracted with [appellant] to construct a residence in Irving, Texas. Because of your recent conduct, [appellant] finds it impossible to perform pursuant to the terms of the contract. Your conduct constitutes an anticipatory breach of the contract and [appellant] is hereby exercising [his] right to terminate that contract.
Thus, the very exchange of correspondence between the parties' attorneys tells us of a civil dispute between homeowner and contractor with the attendant complaints of one against the other arising from different positions as to their contractual ar rangement. but before leaving the correspondence between the parties' attorneys, we point out that among the list of complainant's dissatisfactions with appellant is the item contained in complainant's attorney's letter of April 27, 1987:
4. Your having drawn approximately $5,000.00 for appliances which you have not purchased or placed upon the property.
Hence, here the complainant views the appliance draw as in the amount of $5,000.00. Nonetheless we fail to find in the indictment or charge any asserted $5,000.00 appropriation of complainant's money by appellant.
With two of the three appliance figures before us, we now quote the indictment:
Defendant, on or about the following dates in the County and State aforesaid, did unlawfully, then and there, knowingly and intentionally, appropriate, to-wit: acquire and exercise control over property other than real property, to-wit: current money of the United States of America, the owner of said property being [complainant], who had a greater right to possession of said property than said Defendant, in the following amounts:

 DATE OF APPROPRIATION AMOUNT OF APPROPRITION
 July 1, 1986 $ 45.90
 July 1, 1986 $ 195.00
 July 1, 1986 $ 350.00
 July 1, 1986 $ 120.00
 July 3, 1986 $ 1,000.00
 July 3, 1986 $ 172.33
 July 7, 1986 $ 140.93
 July 8, 1986 $ 47.42
 July 9, 1986 $ 768.00
 July 9, 1986 $ 625.00
 July 21, 1986 $ 350.00
 July 21, 1986 $ 250.00
 July 22, 1986 $ 1,997.00
 August 21, 1986 $ 1,000.00
 September 7, 1986 $ 625.00
 September 10, 1986 $ 117.01
 September 10, 1986 $ 77.67
 September 10, 1986 $ 350.00
 September 12, 1986 $ 400.00
 September 15, 1986 $ 388.00
 September 18, 1986 $ 1,000.00

*631
 DATE OF APPROPRIATION AMOUNT OF APPRROPRIATION
 September 19, 1986 $ 288.00
 September 29, 1986 $ 200.78
 October 7, 1986 $ 51.86
 October 10, 1986 $ 625.00
 October 20, 1986 $ 488.85
 October 22, 1986 $ 1,000.00
 October 31, 1986 $ 58.51
 October 31, 1986 $ 67.53
 October 31, 1986 $ 58.41
 November 1, 1986 $ 350.00
 November 11, 1986 $ 42.41
 November 11, 1986 $ 350.00
 November 25, 1986 $ 375.00
 November 25, 1986 $ 625.00
 November 27, 1986 $ 941.00
 December 6, 1986 $ 4,460.00
 December 8, 1986 $ 108.00
 December 12, 1986 $ 227.00
 December 15, 1986 $ 625.00
 December 19, 1986 $ 28.33
 December 19, 1986 $ 167.00
 December 19, 1986 $ 167.00
 December 19, 1986 $ 48.30
 December 19, 1986 $ 49.47
 December 19, 1986 $ 350.00
 January 9, 1987 $ 107.51
 January 10, 1987 $ 405.00
 January 10, 1987 $ 800.00
 January 19, 1987 $ 887.01
 January 19, 1987 $ 43.69
 January 19, 1987 $ 350.00
 January 29, 1987 $ 250.00
 February 9, 1987 $ 133.77
 February 9, 1987 $ 41.06
 February 9, 1987 $ 350.00
 February 9, 1987 $ 27.43
 February 9, 1987 $ 68.00
 February 10, 1987 $ 625.00
 February 11, 1987 $ 400.00
 March 11, 1987 $ 625.00
 March 18, 1987 $ 400.00
 March 20, 1987 $ 140.00
 March 20, 1987 $ 36.51
 March 20, 1987 $ 28.75
 March 20, 1987 $ 138.87
 March 20, 1987 $ 350.00
 April 15, 1987 $ 625.00

and said Defendant acted with the intent to deprive said owner of said property by withholding from said owner said property permanently and for so extended a period of time that major portion of the value and enjoyment of said property was lost to said owner, and without the effective consent of said owner, in that there was no consent given, [sic]
And all of said amounts were obtained, as alleged, in one scheme and continuing course of conduct, and the aggregate *632 value of the property so appropriated was at least $20,000.00.
We decline to make the home building contractor a criminal by resolving a civil dispute in a criminal proceeding. We cannot agree that home builders must suffer penal sanctions when construction contract interpretation becomes an issue. Indeed, the present case constitutes nothing more than a dispute over contract interpretation. We begin by noting the statutory definition of the offense. A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of the property. Tex. Penal Code Ann. § 31.03(a) (Vernon 1989). We know that the appropriation of property is unlawful if it is without the owner's effective consent. Id. § 31.03(b)(1). At this point we note that the State did not indict appellant by simply using the generic phrase "without effective consent." Instead, the State went further and alleged that the appropriation occurred without effective consent "in that there was no consent given." If a variance exists between the allegations and the proof, it may render the evidence insufficient to sustain the conviction. Wray v. State, 711 S.W.2d 631, 633 (Tex. Crim.App. 1986). Unnecessary words or allegations in an indictment may be rejected as surplusage if they are not descrip tive ot that which is legally essential to the validity of the indictment. Wray, 711 S.W.2d at 633. But where the unnecessary matter is descriptive of that which is legally essential to charge a crime, it must be proven as alleged even though needlessly stated. Wray, 711 S.W.2d at 633.
In the present case, the State recognized its "no consent given" burden. In responding to the allegations in the indictment, the trial court prepared and submitted to the parties its proposed instructions. Neither side objected to the charge. Thereafter, the written instructions containing the application paragraph were delivered to the jury. The trial court instructed the jury as follows:
Now bearing in mind the foregoing instruction, if you find and believe from the evidence beyond a reasonable doubt that the defendant, [appellant], on or about the following dates, in Dallas County, Texas, did knowingly or intentionally, appropriate, to wit: acquire or exercise control over property, other than real property, to wit: current money of the United States of America, the owner of said property being [complainant], who had a greater right to possession of said property than the said defendant, in the following amounts:

 DATE OF APPROPRIATION AMOUNT OF APPROPRIATION
 July 1, 1986 $ 45.90
 July 1, 1986 $ 195.00
 July 1, 1986 $ 350.00
 July 1, 1986 $ 120.00
 July 3, 1986 $ 1,000.00
 July 3, 1986 $ 172.33
 July 7, 1986 $ 140.93
 July 8, 1986 $ 47.42
 July 9, 1986 $ 768.00
 July 9, 1986 $ 625.00
 July 21, 1986 $ 350.00
 July 21, 1986 $ 250.00
 July 22, 1986 $ 1,997.00
 August 21, 1986 $ 1,000.00
 September 7, 1986 $ 625.00
 September 10, 1986 $ 117.01
 September 10, 1986 $ 77.67
 September 10, 1986 $ 350.00
 September 12, 1986 $ 400.00
 September 15, 1986 $ 388.00
 September 18, 1986 $ 1,000.00

*633
 DATE OF APPROPRIATION AMOUNT OF APPROPRIATION
 September 19, 1986 $ 288.00
 September 29, 1986 $ 200.78
 October 7, 1986 $ 51.86
 October 10, 1986 $ 625.00
 October 20, 1986 $ 488.85
 October 22, 1986 $ 1,000.00
 October 31, 1986 $ 58.51
 October 31, 1986 $ 67.53
 October 31, 1986 $ 58.41
 November 1, 1986 $ 350.00
 November 11, 1986 $ 42.41
 November 11, 1986 $ 350.00
 November 25, 1986 $ 375.00
 November 25, 1986 $ 625.00
 November 27, 1986 $ 941.00
 December 6, 1986 $ 4,460.00
 December 8, 1986 $ 108.00
 December 12, 1986 $ 227.00
 December 15, 1986 $ 625.00
 December 19, 1986 $ 28.33
 December 19, 1986 $ 167.00
 December 19, 1986 $ 167.00
 December 19, 1986 $ 48.30
 December 19, 1986 $ 49.47
 December 19, 1986 $ 350.00
 January 9, 1987 $ 107.51
 January 10, 1987 $ 405.00
 January 10, 1987 $ 800.00
 January 19, 1987 $ 887.01
 January 19, 1987 $ 43.69
 January 19, 1987 $ 350.00
 January 29, 1987 $ 250.00
 February 9, 1987 $ 133.77
 February 9, 1987 $ 41.06
 February 9, 1987 $ 350.00
 February 9, 1987 $ 27.43
 February 9, 1987 $ 68.00
 February 10, 1987 $ 625.00
 February 11, 1987 $ 400.00
 March 11, 1987 $ 625.00
 March 18, 1987 $ 400.00
 March 20, 1987 $ 140.00
 March 20, 1987 $ 36.51
 March 20, 1987 $ 28.75
 March 20, 1987 $ 138.87
 March 20, 1987 $ 350.00
 April 15, 1987 $ 625.00

and you further find beyond a reasonable doubt that the said defendant acted with the intent to deprive said owner of said property by withholding from said owner said property permanently or for so extended a period of time that a major portion of the value or enjoyment of said property was lost to said owner, and that the taking, if any, was without the effective consent of said owner, in that there was no consent given;

And, you further find and believe beyond a reasonable doubt that the amounts obtained, *634 if any, were obtained, as alleged, in one scheme or continuing course of conduct, and that the aggregate value of the property appropriated was at least $20,000.00, if it was, you will find the defendant, [appellant], guilty of the offense of Theft of Property of at Least $20,000.00, as charged in the indictment.
(emphasis added). Thus, the application paragraph restricted the jury to finding appellant guilty of the offense charged only if they believed that the property was appropriated without any consent whatsoever by the owner.
In any event, the doctrine of surplusage, which applies to the review of indictments, does not control in reviewing the sufficiency of evidence when measured against the written instructions by the trial court. Once the phrase is incorporated into the court's instructions to the jury in such a way that the jury must find it before a verdict of guilty is authorized, it must be proved, or the verdict will be deemed contrary to the law and evidence. Ortega v. State, 668 S.W.2d 701, 705, n. 10 (Tex.Crim. App.1983) (emphasis in original). In sum, there is no such thing as "surplusage" in the part of the court's instructions to the jury which authorizes a conviction, and if the prosecutor believes that portion of the charge unnecessarily increases his burden of proof, it behooves him specially to request a charge which correctly allocates the burden placed on him by law. This is nothing more than the course of law which is due before a person may be deprived of liberty. Ortega, 668 S.W.2d at 705, n. 10. In the present case, the State posed no objection to the written instructions as delivered by the trial court. Therefore, the jury was instructed by agreement of the parties and through the trial court's charge that they were authorized to convict appellant only if they found that the property was appropriated without effective consent in that no consent was given. For the reasons that follow, the evidence was insufficient under the indictment and the written instructions to support this allegation.
Therefore, we reach the question of whether appellant unlawfully appropriated the money in question with intent to deprive complainant of the money. In other words, we address whether appellant obtained the money in question without complainant's effective consent, in that there was no consent given. We conclude that appellant did not obtain the money without complainant's consent, in that there was no consent given. Indeed, appellant specifically had complainant's consent to obtain the money. Indeed, the contractual arrangement between the parties providing for draws or advances constitutes, as a matter of law, complainant's consent that appellant obtain the money. Therefore, complainant's consent was given by the very contract made and entered into between complainant and appellant. Thus, we reach the contract terms between complainant and appellant. Because of the emphasis on money for appliances, we focus on contract provisions pertaining to the kitchen appliances for illustrative purposes. Here, we see appellant's right to "profit" as to the appliances.
Let us look at the written contract between the parties and learn what the parties put to paper as to when appellant could take his profit. We focus on the State's emphasis on the circumstances when appellant requested and received an advance from the bank solely to buy appliances, never bought any appliances, left the money in the construction account, and later spent some of it on personal items. Hence, we must consider contract provisions pertaining to kitchen appliances. The standard AIA form of contract between the parties focuses on this matter specifically. We quote the contract:
1. Total Contract sum is Three Hundred Ninety-Five Thousand and No 100 Dollars ($395,000.00).
2. The Contractors costs for unloading and handling on the site, Labor, Installation costs overhead and profit shall be included in the allowances.

3. Allowances: See attached page.
4. Bonus sum. *635 (emphasis added). Hence, "profit" shall be included in the "allowances." Thus, we must determine the "allowances." The contract specifies the "allowances" and, in particular, allowances for kitchen applimust ances as follows:

 3. Allowances (includes labor and materials):
 Plumbing fixtures and trim $ 8,000
 Electrical fixtures and trim 8,000
 Intercom system 1,000
 Security system 4,000
 Cable T.V. system
 600 Antenna system
 300
 Stereo system 400
 Door and bath hardware 3,000
 Kitchen Appliances 7,000
 Brick 16,000
 Flooring
 Carpet and pad 8,000
 Vinyle [sic] 1,000
 Wood 2,800
 Marble 5,000
 Wallpaper 4,000
 Front Entry Door Set 4,000
 Landscaping 8,000
 Sprinklers 3,500
 Fencing 2,000
 Safe 500
 _______________________________________________________________
 Total allowances budgeted $ 87,100

(emphasis added). Here then we have the third "appliance" figure in the amount of $7,000.00. Moreover, we submit that for all we know on this record, the amount spent by appellant from the draw ("allowance") at issue was "profit" allowed him by the terms of the contract as profit to be included in the allowance. Indeed, the State does not dispute that appellant had completed eighty-five to ninety percent of the construction.
With this background, we turn to consider whether the evidence proved that appellant committed a theft. As submitted to the jury, appellant's guilt was dependent upon a finding that appellant knowingly appropriated the specified sums of money from the complainant. See Moore v. State, 160 Tex.Crim. 183, 268 S.W.2d 187, 189 (1954). Hence, the trial court determined as a matter of law that complainant owned the money. See Moore, 268 S.W.2d at 189. Thus, no cognizance was taken of evidence showing that appellant had contractual claims to the money. See Moore, 268 S.W.2d at 189. In determining the sufficiency of the evidence to support the conviction, we are not permitted to ignore such testimony. See Moore, 268 S.W.2d at 189. In the present case, there is a very decided conflict as to who is the actual owner of the money. See Moore, 268 S.W.2d at 189. Criminal courts are not the forum for determination of disputed titles to real estate, and a criminal prosecution is not the medium for making such determination. Moore, 268 S.W.2d at 189; Palmer v. State, 764 S.W.2d 332, 335 (Tex.App.-Houston [1st Dist.] 1988, no pet.). We conclude that criminal courts are not the forum for determination of disputed rights under construction contracts, and the present criminal prosecution is not the medium for making such determination. Indeed, long ago the Texas Court of Criminal Appeals recognized that in a civil proceeding there may be extreme doubt as to whom property really belongs and that certainly a criminal proceeding record can leave the matter in *636 doubt resulting in the court' unwillingness to sanction a verdict of guilty. See Allsup v. State, 62 S.W. 1062 (Tex.Crim.App.1901).
The question involved is simple enough. The question is whether the evidence was sufficient to warrant the finding that the representation of appellant induced complainant to pay him the money and, at the time of taking it, appellant had the intent to deprive complainant thereof. See Cox v. State, 658 S.W.2d 668, 670 (Tex. App.-Dallas 1983, pet. ref'd), citing Kinder v. State, 477 S.W.2d 584, 586 (Tex.Crim. App.1971). We conclude that the fact that appellant completed eighty-five to ninety percent of the construction clearly negates that any representation or promise by appellant was false at the time complainant surrendered the money in question to appellant. See Cox, 658 S.W.2d at 670-71, citing Kinder, ill S.W.2d at 586. We conclude further that the evidence in the present case established no more than a dispute over appellant's performance of a home building contract. Given the extent of appellant's admitted performance of services, appellant had the right to litigate in a civil action his rights under the contract. A disputed claim over ownership of property does not authorize a conviction for theft. Cox, 658 S.W.2d at 671, citing Bryant v. State, 627 S.W.2d 180, 183 (Tex.Crim.App. 1982) (evidence insufficient to support conviction for theft of landscaping plants where controversy between two parties to a verbal landscaping construction contract centered not upon removal of plants from the job site but upon the work progress and periodic payments therefor). The mere fact that one fails to return or pay back money after failing to perform a contract, for the performance of which the money was paid in advance, does not constitute theft. Cox, 658 S.W.2d at 671, citing Hesbrook v. State, 149 Tex.Crim. 310, 194 S.W.2d 260, 262 (1946) (evidence insufficient to support theft conviction in case of agreement to bring back complainant's son from the army in Italy during World War II for $400.00). We conclude, therefore, that the State failed to establish that at the time of taking any money from complainant, appellant had the intent to deprive her thereof. Thus, we hold that the evidence is insufficient to sustain the conviction for at least four reasons. First, the indictment does not allege an appropriation of any of the three "appliance" figures of $3,000.00, $5,000.00, or $7,000.00. Second, the evidence does not conform to the instruction given in that the trial court did not inquire of the jury as to the amounts of $3,000.00, $5,000.00, or $7,000.00. Third, the record reflects the existence of a dispute over ownership of property. Fourth, complainant's consent was given by the very contract made and entered into between complainant and appellant.
Sufficiency of the evidence must be considered from the charge given. If the evidence does not conform to the instruction given, it is insufficient as a matter of law. Nickerson v. State, 782 S.W.2d 887, 891 (Tex.Crim.App.1990). In both circumstantial and direct evidence cases the standard by which evidence is reviewed is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Skelton v. State, 795 S.W.2d 162, 167 (Tex.Crim. App.1989), cert, denied,  U.S.___, 111 S.Ct. 210, 112 L.Ed.2d 170 (1990). If the evidence supports an inference other than the guilt of the appellant, a finding of guilt beyond a reasonable doubt is not a rational finding. Denby v. State, 654 S.W.2d 457, 464 (Tex.Crim.App.1983). Proof which amounts to only a strong suspicion or mere probability is insufficient. Skelton, 795 S.W.2d at 167. It is the appellate court's function to insure that no one is convicted of a crime except on proof beyond a reasonable doubt. Skelton, 795 S.W.2d at 167. In reviewing the sufficiency of the evidence in the light most favorable to the trial court's judgment, we conclude that any rational trier of the facts could not have found beyond a reasonable doubt that any of appellant's draws were without effective consent of complainant. See Hann, 111 S.W.2d at 734. Moreover, in reviewing the sufficiency of the evidence in the light most favorable to the trial court's judgment, we conclude that any rational trier of the facts could not have found beyond a reasonable *637 doubt that appellant's draws were without effective consent of complainant in that there was no consent given. See Hann, 111 S.W.2d at 734. Consequently, we sustain appellant's sole point of error, reverse the trial court's judgment, and render a verdict of acquittal.
ENOCH, C.J., dissents.
ENOCH, Chief Justice, dissenting.
I respectfully dissent. Gerald Wayne Stockman was indicted for theft of personal property in an aggregate value in excess of $20,000, a second degree felony. TexPenal Code Ann. § 31.03(e)(5)(B) (Vernon 1989). He was found guilty of the lesser included offense of theft over $750, but less than $20,000, a third degree felony. Tex.Penal Code Ann. § 31.03(e)(4)(A) (Vernon 1989). The evidence is sufficient to support Stockman's conviction. I would overrule the point of error and affirm the trial court's judgment.
To be sure, there is a civil dispute between Stockman and the Bealls, the complainants, as to much of what transpired. However, the existence of a civil dispute should not result in an acquittal for Stockman. For example, fraud exists simultaneously in the civil and criminal laws; assault and murder have civil counterparts in tort and wrongful death; and theft is the criminal parallel of civil conversion. The elements of a transaction define whether it is a crime. It is not relevant that the transaction has its genesis under a contract. I agree with the majority and the jury that there is insufficient evidence to support a conviction of theft of personal property in excess of $20,000. However, I depart from the majority in its disagreement with the jury that a lesser included theft occurred.
Our responsibility is not to substitute our view of the evidence for that of the jury's. Blankenship v. State, 780 S.W.2d 198, 207 (Tex.Crim.App.1989). Our job is to apply the appropriate standard of review. Although I agree with the standard of review as set forth by the majority, I believe that the majority did not follow that standard. The question for us to decide is whether, considering the evidence in the light most favorable to the jury's verdict, there is sufficient evidence to support finding the essential elements of the crime beyond a reasonable doubt. Skelton v. State, 795 S.W.2d 162, 167 (Tex.Crim.App. 1989), cert. denied,  U.S. ___, 111 S.Ct. 210, 112 L.Ed.2d 170 (1990). The answer to that question is yes.
Stockman had no colorable right to the funds drawn to buy the appliances. Stockman testified as follows:
Q: But you took a draw for those appliances, did you not?
A: That's correct. I received a draw.
Q: And you didn't pay for the appliances, did you?
A: No, I did not.
Q: But you told the banker you paid for them?
A: No.
Q: How did you get the draw for thosestrike that question. Did the banker not ask you about the appliances specifically?
A: [At] the time that I made the draw on the appliances I did not request the entire amount for the appliances, I requested only $3,000. Mr. Oberlin was out of town at that time his secretary took the draw request and she went and had it approved by somebody else in the bank and called me back and said my draw had been approved. I found out a week or not quite a week later when I received the draw slip that I had gotten the entire amount, not the $3,000 that I had requested.
Q: Did you take the amount of draw and pay off the appliances?
A: No, I did not.
Q: Did you keep that money?
A: It was left in my checking account.
Q: Left in your checking account and eventually you drew it out some other way?
A: Eventually it was used.
Q: Personally?
A: Personally. Some of it.
Stockman specifically represented to the bank that he wanted $3,000 to buy appliances. *638 He then admitted that he received more than that amount, but spent no money on appliances. Further, he gave no reason for not buying the appliances and admitted spending some of that money on personal items.
Regarding the appliance advances, the majority expresses concern that Stockman was fired by the Bealls before he could complete the job. Majority Opinion at 629. The testimony, though, shows that Stockman received the appliance draw at some time in December but was not removed from the job until the end of May. It is undisputed that in January, February, and March, Stockman withdrew more than $6,800 from the building account for his personal use.
Because the jury found that Stockman was guilty of the lesser included offense and because the evidence is sufficient to support this conviction, I would overrule the point of error and affirm.