

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-25-00123-CV

———————————————

CHARLES GLEN HYDE; CANDACE HYDE; DREAMSHIPS, INC.;
HYDE-WAY, INC.; AND TEXAS AIR CLASSICS, INC.; Appellants

V.

AERO VALLEY PROPERTY OWNERS ASSOCIATION, INC., Appellee

On Appeal from the 16th District Court
Denton County, Texas
Trial Court No. 20-6359-16

Before Sudderth, C.J.; Birdwell and Bassel, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

This long-running dispute centers on who has the exclusive authority to manage the Aero Valley Airport[1] (the Airport[2]) and to collect fees for that purpose.

Appellants Charles Glen Hyde; Candace Hyde; Dreamships, Inc.; Hyde-Way, Inc.; and Texas Air Classics, Inc. (collectively, the Hyde Parties) own the fee interest in the Airport, and they claim they have the exclusive authority to manage it. But many of the property owners in the Airport's vicinity disagree; they hold easements to access and use the Airport, and according to them, Appellee Aero Valley Property Owners Association, Inc. (the POA)—the entity that administers their easement rights and obligations—has Airport management authority.

The POA filed suit for a judicial declaration of its exclusive management authority, and many of its constituent property owners (the Property Owners) intervened, asserting similar declaratory judgment claims. Ultimately, the trial court

---

[1]The Airport's name is disputed. We use the name listed in the declaratory judgment: Aero Valley Airport. *But see Hyde v. Nw. Reg'l Airport Prop. Owners Ass'n*, 583 S.W.3d 644, 645 (Tex. App.—Fort Worth 2018, pet. denied) [*hereinafter Hyde I*] (referencing the "Northwest Regional Airport").

[2]Throughout the trial court proceedings, the parties used the term "Airport" to convey different meanings. At times, the parties expressly limited the term to "the runway"; at other times, they used it to reference "the runway-parallel taxiway tracts"; at other times, they defined it to encompass the "runway-parallel taxiway-ramp common areas"; and at still other times, they used the term without clarifying its intended meaning. We use the term "Airport" in the same manner as it appears in the declaratory judgment, which—as best we can glean—used the term as a reference to the Aero Valley Airport's "runway-parallel taxiway-ramp common areas."

granted the POA and Property Owners' joint summary judgment motion, declared that the POA had the exclusive authority to manage the Airport, and awarded the POA its attorney's fees. The Hyde Parties challenge this judgment on appeal.

Or, rather, the Hyde Parties challenge the judgment as to the POA—they do not appeal the judgment as to the Property Owners. Thus, we must affirm the unchallenged declaratory judgment as to the Property Owners. And this effectively guts the Hyde Parties' challenges to the POA's declaratory judgment as well; indeed, even the Hyde Parties acknowledge that the Property Owners' claims and "interest[s we]re . . . entangled with those of the POA." So, based on the unchallenged portion of the judgment, and without regard to the merits, we affirm.

## I. Background

More than a half-century ago, Edna Whyte owned the Airport while the land around it was being developed. *See Hyde v. Aero Valley Prop. Owners Ass'n*, No. 02-20-00416-CV, 2021 WL 2460799, at *2 (Tex. App.—Fort Worth June 17, 2021, no pet.) (mem. op.) [hereinafter *Hyde II*]; *Hyde I*, 583 S.W.3d at 645–46. During that time, the Airport was involved in a convoluted series of conveyances, easements, and restrictions, most of which are irrelevant to this appeal. *See generally Hyde I*, 583 S.W.3d at 646. What matters for our purposes is that, in the end, property owners in the Airport-vicinity developments held easements to access and use the Airport. And although the language of these easements differed, many of the easements expressly extended to related appurtenances and referenced the easement holders' "right [and,

3

in some instances, obligation] of improving, reconstructing, repairing, and inspecting" the Airport.

In addition, for one development in particular—a development northeast of the Airport—Whyte's development company (the Company) filed several deed restrictions that established a committee (the Committee) to act as a governing body and to collect fees "for proper maintenance of common areas, including, but not limited to, buildings and taxiways." *See id.* The Committee was initially manned by Whyte, her two Company business partners, and four property-owner-elected representatives.

Around the same time, Whyte and her two business partners conveyed several Airport interests between themselves before selling the Airport to a third party. When the dust settled, the third party held the Airport fee interest, and Whyte and her two Company business partners each held an easement for "an airport runway and taxiway and all necessary or desirable appurtenances for the operation of same." It was not long before the Hyde Parties assumed the third party's deed to the Airport,[3] and the saga of litigation began. *See generally Hyde II*, 2021 WL 2460799, at *1–18; *Hyde I*, 583 S.W.3d at 645–52; *Hyde v. Hawk*, No. 07-16-00357-CV, 2018 WL 3384870, at *1–10 (Tex. App.—Amarillo July 11, 2018, pet. denied) (mem. op.); *Walchshauser v. Hyde*, 890 S.W.2d 171, 172–75 (Tex. App.—Fort Worth 1994, writ denied); *see also*

---

[3]Specifically, Hyde-Way assumed the third party's deed.

*Hann v. State*, 771 S.W.2d 731, 732–34 (Tex. App.—Fort Worth 1989, no pet.) (reversing trespass conviction based on "bona fide dispute" related to Airport).

Fast forward several decades, and the Airport-area property owners attempted to consolidate Airport management authority by, among other things,[4] resurrecting the then-dormant governing Committee that had been contemplated in Whyte's Company's deed restrictions. The property owners elected new Committee members, and the Committee filed a resolution that not only clarified its authority to serve as a governing body and effectuate the property owners' easement rights but also permanently delegated that authority to the POA.

The POA filed this suit against the Hyde Parties to, among other things, secure judicial recognition of its exclusive authority to manage the Airport as the administrator of the property owners' easement rights and the successor to the Company's reservations and deed restrictions. More than twenty-five constituent Property Owners—all "members of the . . . POA" who had "elected [the] POA to represent their rights and duties"—intervened. The Property Owners shared the POA's counsel, and like the POA, they pleaded for "declaratory relief from the [c]ourt

---

[4]At one point, many of the Airport-area property owners attempted to amend their respective deed restrictions to adopt an integrated set of deed restrictions, but in 2018, we held that the integrated deed restrictions had not been validly adopted. *See generally Hyde I*, 583 S.W.3d at 646–52.

relating to [the] POA's and [the Hyde Parties'] rights as it relates to the Airport."  The

Hyde Parties responded by requesting declaratory judgments of their own.[5]

The POA and Property Owners then filed a joint motion for summary

judgment, prompting the Hyde Parties to file a competing cross-motion.  The trial

court granted the POA and Property Owners' joint motion,[6] and in its summary

judgment order, it declared that (1) "[t]he POA Board ha[d] the exclusive authority to

govern, operate, and manage [the Airport]"; (2) "[t]he POA Board's authority

extend[ed] to all runway access and use easement holders"; and (3) Whyte's

Company's deed "restrictions appl[ied] to all lots formerly owned by Edna Whyte."[7]

Later, the trial court finalized these declarations in a judgment that awarded the POA

its attorney's fees as well.[8]

---

[5]In 2021, we reviewed a temporary injunction entered in this case, but we did not address the merits of the parties' claims.  *See generally Hyde II*, 2021 WL 2460799, at *1–18.

[6]The trial court granted the Hyde Parties' no-evidence summary judgment motion as to other causes of action asserted against them.  That portion of the judgment is not challenged on appeal.

[7]In the Hyde Parties' response to the POA and Property Owners' motion, the Hyde Parties objected that the declarations sought were "wholly different from those identified in [the POA's] First Amended Petition and wholly different from those sought in [the Property Owners'] Plea in Intervention."  The trial court overruled this and other objections.

[8]Based on the language of the final judgment, the trial court appears to have limited its award of attorney's fees to the POA—perhaps because, at the hearing on attorney's fees, the POA and Property Owners' shared counsel represented that the

6

## II. Discussion

In five issues, the Hyde Parties argue that the trial court erred by granting the POA's requested declaratory relief and by denying the Hyde Parties' motion for the opposite declaratory relief.[9] But, as the POA points out, the Hyde Parties do not appeal the judgment as to the Property Owners. Indeed, the Hyde Parties do not include the Property Owners as parties to this appeal at all. And in their reply brief, they reaffirm that the Property Owners' "claim for declaratory relief is not before th[is c]ourt."[10]

---

POA had paid the shared attorney's fees. It is unclear how the trial court calculated the precise amount of fees awarded, though.

[9]The Hyde Parties' five issues assert that (1) the trial court erred by denying summary judgment on their res judicata and collateral estoppel defenses; (2) the trial court erred by granting the POA's request for declaratory relief and denying the Hyde Parties' competing request; (3) if the declaratory judgment is reversed, we should remand the award of attorney's fees for reconsideration; (4) if the declaratory judgment is reversed, we should order the supersedeas bond released; and (5) whatever the merits of the declaratory judgment, the trial court erred by ordering Candace Hyde; Dreamships, Inc.; and Texas Air Classics, Inc. to share in the liability for the POA's attorney's fees. The first four issues are resolved by the Hyde Parties' failure to challenge the declaratory judgment in favor of the Property Owners, and the fifth issue is nullified by the Hyde Parties' concessions. *See infra* note 12.

[10]In their reply brief, the Hyde Parties argue that the Property Owners did not, in fact, prevail on their declaratory judgment claim. They contend that, because the declarations sought in the Property Owners' petition in intervention differed from those granted in the summary judgment order, the Property Owners' still-pending declaratory claim was implicitly dismissed when the trial court rendered final judgment. This argument is both disingenuous and inaccurate.

First, it is inconsistent with the Hyde Parties' representations in the trial court. At the post-summary judgment hearing on attorney's fees, the Hyde Parties

7

When, as here, a judgment disposes of multiple parties and claims and the appellant challenges some, but not all, of those parties and claims, we must affirm the unchallenged portions of the judgment. *See Ontiveros v. Flores*, 218 S.W.3d 70, 71 (Tex. 2007); *Jacobs v. Satterwhite*, 65 S.W.3d 653, 655–56 (Tex. 2001); *see also Bass v. Bogle*, No. 03-23-00319-CV, 2024 WL 3446921, at *7 (Tex. App.—Austin July 18, 2024, no pet.) (mem. op.) (noting unchallenged declaration and fee award and holding that, "[b]ecause they are unchallenged on appeal, we affirm those portions of the final judgment"); *$214.00 U.S. Currency v. State*, No. 02-14-00226-CV, 2015 WL 1577365, at *4–6 (Tex. App.—Fort Worth Apr. 2, 2015, no pet.) (mem. op.) (affirming unchallenged portion of forfeiture judgment when appellant challenged forfeiture of

referenced an "agree[ment] by Rule 11 that there's only one claim remaining in this case to be resolved by the [c]ourt[, a]nd that is attorneys' fees." The Hyde Parties made no mention of the Property Owners' allegedly still-pending claim for declaratory relief. Moreover, at the fee hearing, the Hyde Parties questioned whether there was evidence that the Property Owners had paid any attorney's fees separate from the POA, arguing that the Property Owners "d[id]n't get fees [just] as a bonus for winning." And later, when the Hyde Parties moved the trial court to set the supersedeas bond amount, they asserted that "[s]uperseding the judgment pose[d] little, if any, potential loss to Plaintiff and Intervenors." The Hyde Parties' representations in the trial court thus implicitly acknowledged that both the POA and the Property Owners had prevailed on their declaratory judgment claims.

Second, the trial court's judgment did not need to track the Property Owners' pleadings verbatim for the Property Owners to prevail. By that logic, the POA did not prevail either, as the trial court's declarations were not carbon copies of the declarations set out in the POA's pleadings. What mattered was that the substance of the declaratory judgment granted the relief sought in the POA's and Property Owners' petitions by recognizing the POA's—not the Hyde Parties'—exclusive authority to manage the Airport.

some items but not others); *Sun-Key Oil Co. v. Cannon*, No. 11-07-00025-CV, 2009 WL 626071, at *4 (Tex. App.—Eastland Mar. 12, 2009, no pet.) (mem. op.) (noting that the trial court entered declaratory judgments in favor of two appellees and appellant "ha[d] not raised an appellate issue attacking the declaratory judgment in favor of [one appellee]" so "we must affirm the declaratory judgment in favor of [that appellee]"); *Gulf Ins. Co. v. Vantage Props., Inc.*, 858 S.W.2d 52, 54–55 (Tex. App.—Houston [14th Dist.] 1993, writ denied) (noting that "[t]he portion of a judgment awarding recovery to one party from which no appeal is taken" must be affirmed).

In fact, it would be error for us to do otherwise. *See Ontiveros*, 218 S.W.3d at 71 (holding that court of appeals erred by reversing claims for tortious interference, conspiracy, conversion, and fraud because the appellant had "complained only about the summary judgment granted on his claims for fraudulent transfer and breach of fiduciary duty" so he "waived error" as to the unchallenged portions of the judgment); *Jacobs*, 65 S.W.3d at 655–56 (holding that "[t]he court of appeals erred in reversing summary judgment on the professional negligence claim" because the appellant complained of summary judgment on its contract claim but "never complained about the summary judgment on th[e professional negligence] claim" so he "waived any error" as to that portion of the judgment). Thus, we affirm the unchallenged portion of the trial court's judgment, i.e., the declarations issued in favor of the Property Owners.

9

And, as it turns out, this disposition undercuts the Hyde Parties' challenges to the remainder of the judgment—the declarations issued in favor of the POA.

In their joint summary judgment motion, the POA and Property Owners asserted that the POA was the administrator of the Property Owners' easement rights and obligations. And on appeal, the Hyde Parties acknowledge that the Property Owners "[we]re members of the POA," that they "joined . . . the POA's Motion for Summary Judgment," that their easement rights and obligations "[we]re filtered through the POA," and that their "interest[s we]re . . . entangled with those of the POA."[11] In other words, the Hyde Parties recognize that the Property Owners' rights and declaratory claims were inextricably intertwined with the POA's. Yet, they do not appeal the declaratory judgment as to the Property Owners.

But it would be legally and logically inconsistent to reverse the trial court's declarations as to the POA while leaving them in place as to the Property Owners. *See Cates v. Sparkman*, 18 S.W. 446, 446 (Tex. 1886) (dismissing appeal because the "relief . . . sought [in the trial court] . . . could not be given without affecting all the defendants alike" and "judgment was rendered in favor of all the defendants," but "no appeal was perfected as against [one] defendant"); *Gulf Ins.*, 858 S.W.2d at 54–55

---

[11]The Hyde Parties' acknowledgements come in their attempts to advance other legal arguments, e.g., an argument that the Property Owners are bound by a prior judgment involving the POA, and an argument that the Property Owners tried certain issues by consent when they joined in the POA's summary judgment motion and response.

10

(rejecting challenge to judgment on indemnity claim because granting appellate relief on indemnity claim would be "inconsistent with the trial court's . . . [unchallenged] judgment granting the [related] declaratory relief"). Rather, the affirmed, unchallenged judgment in favor of the Property Owners—the judgment declaring the POA's exclusive Airport management authority—frustrates the Hyde Parties' attempts to challenge the declaratory judgment in favor of the POA.[12] *See Gulf Ins.*,

---

[12]The Hyde Parties raise one lingering complaint that is not resolved by our affirmance of the declaratory judgment: They argue that the trial court erred by ordering Candace Hyde; Dreamships, Inc.; and Texas Air Classics, Inc. to share in the liability for the POA's attorney's fees. According to the Hyde Parties, these three listed defendants had "no connection" to the POA's declaratory judgment claims and there was "no evidence of any dispute between the POA and these parties."

But elsewhere in their briefing, the Hyde Parties concede "that the declaratory relief granted in favor of the POA affects all Appellants." This concession nullifies their fee-related appellate complaint. *Cf. Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 895–96 (Tex. 2018) (noting that respondent's argument regarding the alleged damage caused by the petitioner's defamation contradicted and undermined its argument that the defamatory statement did not involve a matter of public concern).

Moreover, even if the Hyde Parties had not conceded away the issue, we would overrule it as inadequately briefed. *See* Tex. R. App. P. 38.1; *see Perkins v. Hicks*, No. 02-19-00207-CV, 2020 WL 7393334, at *1 (Tex. App.—Fort Worth Dec. 17, 2020, no pet.) (per curiam) (mem. op.) (reiterating that "an inadequately briefed issue may not preserve error"). The hearing on and evidence of attorney's fees fills three volumes of the reporter's record, yet the Hyde Parties make no reference to these volumes at all. *Cf.* Tex. R. App. P. 38.1(i) (requiring argument portion of brief to contain "appropriate citations . . . to the record"); *Gunderson v. Nat'l Indoor RV Ctrs., LLC*, No. 02-24-00025-CV, 2024 WL 3365233, at *2–4 (Tex. App.—Fort Worth July 11, 2024, pet. denied) (mem. op.) (holding issues inadequately briefed when "the argument portion of [the] brief contain[ed] a mere five record references"); *Perkins*, 2020 WL 7393334, at *1 (holding issues inadequately briefed when the appellant "provided us with only a few scant citations to the record"). Nor do the Hyde Parties reference the statutory authority for the fee award, the legal standards that govern the evidence of

858 S.W.2d at 54–55 (holding that unchallenged, affirmed portion of the judgment "bar[red] appellant from asserting its summary judgment claims on . . . appeal because the issues upon which such summary judgment relief depend[ed] were determined against appellant by the portion of the trial court's judgment from which it did not appeal"); *see also Sun-Key Oil Co.*, 2009 WL 626071, at *5 (concluding that unchallenged declaratory judgment mooted appellant's challenges to other summary judgment rulings).

So, regardless of the merits of the POA's declaratory judgment, we overrule the Hyde Parties' challenges to it.

---

attorney's fees, or any fee-related case law that might support their appellate complaint. *Cf.* Tex. R. App. P. 38.1(i) (requiring argument portion of brief to contain "appropriate citations to authorities"); *Gunderson*, 2024 WL 3365233, at *3–4 (holding issues inadequately briefed when appellant "provide[d] no legal citations to support his arguments"); *Perkins*, 2020 WL 7393334, at *1 (holding issues inadequately briefed when the appellant provided "no citations to legal argument[] and no legal argument presenting her issues"). Although we strive to reach the merits of appellate complaints whenever reasonably possible, *see St. John Missionary Baptist Church v. Flakes*, 595 S.W.3d 211, 213–14 (Tex. 2020), we cannot take on the role of an advocate by hunting for supportive facts and case law to craft the Hyde Parties' argument for them. *See Gunderson*, 2024 WL 3365233, at *4 (explaining that "it would be inappropriate" for us to "develop [a party's] legal arguments for him before resolving the appeal based on the legal arguments we crafted on his behalf" (internal quotation marks omitted)).

## III. Conclusion

Because the unchallenged judgment in favor of the Property Owners undermines the Hyde Parties' challenges to the judgment in favor of the POA, we affirm. *See* Tex. R. App. P. 43.2(a).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: March 19, 2026