James R. GRATTAN, Appellant,

v.

**BOARD OF SCHOOL COMMISSIONERS OF BALTIMORE CITY; and Jennye Thomas, individually and as Principal, Greenspring Junior High School, Appellees.**

No. 86–3021.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 6, 1986.

Decided Dec. 1, 1986.

Glen M. Fallin, Ellicott City, Md., for appellant.

J. Shawn Alcarese, Asst. Sol. (Benjamin L. Brown, City Sol., Baltimore, Md., on brief), for appellees.

Before HALL, Circuit Judge, HAYNSWORTH, Senior Circuit Judge, and CLARKE, United States District Judge for the Eastern District of Virginia, at Norfolk, sitting by designation.

CLARKE, District Judge:

Mr. Grattan appeals the decision of the district court granting summary judgment in favor of the Board of School Commissioners of Baltimore City (School Board) and Jennye Thomas, principal of Greenspring Junior High School in Baltimore, Maryland. The case was brought below pursuant to 42 U.S.C. § 1983 and the court's pendent jurisdiction, alleging a violation of Mr. Grattan's right to free speech under the First Amendment of the United States Constitution and Article 40 of the Declaration of Rights of the Constitution of Maryland.[1] The complaint also sets forth claims for relief under state law for intentional infliction of emotional distress, malicious prosecution and false imprisonment.

The factual findings of the trial court may be briefly summarized. On September 9, 1983, Mr. Grattan was in the parking lot of Greenspring Junior High School at approximately eight a.m. distributing flyers on behalf of his employer, the Baltimore City Teachers Association (BCTA). The teachers at the school were represented by the Baltimore Teachers Union (BTU). On one side of the flyer was a cartoon depicting Baltimore City Mayor Donald Schaefer with his arm around a member of the BTU thanking that member for a $1,000 campaign contribution. Below the picture was the slogan, "Because More of the Same Isn't Good Enough Anymore." The other side of the flyer contained a blank application for membership in the BCTA.

As teachers arrived to begin their work day, Mr. Grattan began passing out the leaflets. School principal Jennye Thomas spotted Mr. Grattan in the parking lot and ordered him to leave the premises. Ms. Thomas went into the school, consulted with the deputy superintendent of schools, and told the head of security for the school system that Mr. Grattan's presence and activities on the school parking lot were unauthorized. Ms. Thomas stated that her acts in having Mr. Grattan removed from school property were done with an awareness of his "union's activities throughout the school system to supplant the then officially recognized teachers' union and the 'political battles' then taking place as a result." She was also aware of "a directive from the administrative offices of the school system that no unauthorized union representatives or activities would be permitted upon school property."

A short time later, a school security officer told Mr. Grattan that he would have to leave the parking lot or face arrest. When Mr. Grattan refused to leave, he was placed under arrest and taken to a Baltimore City station house where he was booked and placed in a holding cell for eight hours. On October 13, 1983, Mr. Grattan was tried and acquitted on a charge of trespass on school premises pursuant to *Md.Educ.Code Ann.* § 26–102 (1985). Mr. Grattan then initiated this civil action against the School Board and Ms. Thomas.

The case below and this appeal turn on the interpretation of Section 26–102 of the Maryland Code, which provides in pertinent part:

(a) *Denial of access to school grounds.* —The governing board, president, superintendent, or principal, of any public institution of elementary, secondary, or higher education, or a person designated in writing by the board of any of these persons, may deny access to the buildings or grounds of the institution to any person, who:

(1) Is not a bona fide, currently registered student, or staff or faculty member at the institution, and who does not have lawful business to pursue at the institution; or

\* \* \* \* \* \*

---

1. Article 40 of the Declaration of Rights of the Maryland Constitution provides:

That the liberty of the press ought to be inviolably preserved; that every citizen of the State ought to be allowed to speak, write and publish his sentiments on all subjects, being responsible for the abuse of that privilege.

(3) Acts in a manner that disrupts or disturbs the normal educational functions of the institution.

\* \* \* \* \* \*

(d) *Penalty.*—A person is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $1,000, imprisonment not exceeding 6 months, or both, if he:

(1) Trespasses on the grounds of any public institution of elementary, secondary, or higher education;

(2) Fails or refuses to leave the grounds of any of these institutions after being requested to do so by an authorized employee of the institution.

The trial court held that under *Dunkel v. Elkins*, 325 F.Supp. 1235 (D.Md.1971), "lawful business" was defined as any constitutionally protected activity. *Md. Educ. Code Ann.* § 26–102(a)(1) (1985). The court found that the school parking lot was not a public forum and, consequently, that the State was not required to provide unlimited access to the property for the purpose of expressive communications. *Perry Education Association v. Perry Local Educators Association*, 460 U.S. 37, 45, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983); *see Cornelius v. NAACP Legal Defense and Education Fund*, 473 U.S. 788, ——, 105 S.Ct. 3439, 3448, 87 L.Ed.2d 567 (1985). The district court further held that the flyer message was not political in nature and that the School Board's desire to avoid the disruption and controversy surrounding union activities was an appropriate justification for barring Mr. Grattan's activities. *Cornelius* at ——, 105 S.Ct. at 3453; *Perry*, 460 U.S. at 52, 103 S.Ct. at 959. Summary judgment was granted because of Mr. Grattan's failure to present evidence that the School Board's justification for excluding his activities was a pretext for viewpoint discrimination.

On appeal of the district court's decision, Mr. Grattan argues: (1) that the trial court erred in holding that a public school parking lot, during non-school hours, is a non-public forum, where only a limited right of First Amendment expression may be exercised; (2) that the School Board's exclusion of his solicitational activities was inconsistent with Maryland's statutory and regulatory scheme governing the selection of an exclusive bargaining representative by the school's teachers; and (3) that the state law questions raised should be certified to the Court of Appeals of Maryland.

### I.

█ In support of his contention that the trial court erred in holding that the school parking lot is a non-public forum affording only a limited right of expression under the First Amendment, Mr. Grattan presents several arguments. First, he argues that a public school parking lot is akin to a public sidewalk, i.e. a "quintessential public forum" in which the State may not prohibit communicative activity absent the showing of a compelling State interest. *Perry* at 45, 103 S.Ct. at 955.

The Court does not agree with Appellant's characterization of a school parking lot as a public forum. For purposes of analysis under the First Amendment, the parking lot falls within the third category of public property described by the Supreme Court in *Perry*, i.e. public property which is not by tradition or designation a forum for public communication. *Id.* In describing the standards to be applied in such a forum, the Court held:

[T]hat the "First Amendment does not guarantee access to property simply because it is owned or controlled by the government." In addition to time, place, and manner regulations, the State may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view. As we have stated on several occasions, " ' "[t]he State, no less than a private property owner, has power to preserve the property under its control for the use

to which it is lawfully dedicated.' ' " [Citations omitted.]

*Id.* at 46, 103 S.Ct. at 955.

■ Because a public school parking lot is a non-public forum, the State of Maryland and the School Board may prohibit the solicitational activities of Mr. Grattan. The constitutionally protected activity that meets the test of "lawful business" under the statute in question is activity which is related to the educational purposes of public school property. While we agree with the district court that a desire to avoid the disruption and controversy of union politics provides a sufficient justification for excluding Mr. Grattan's activities, such exclusion is based on the broader grounds that the Appellant's activities were not related to the education of students.[2] In so holding, we recognize the need to regulate public access to our nation's schools. Places where young people gather can invite fences seeking to recruit suppliers of stolen goods, pornographers, drug merchants and other persons plying illicit trades. Denial of access to Mr. Grattan during non-school hours was therefore reasonable and was not a pretext for viewpoint discrimination.

■ The Appellant's second argument is that expressive activity on public school property cannot be restricted unless it is found to be disruptive of the educational process. Mr. Grattan's reliance upon the holdings of *Tinker v. Des Moines Independent Community School District,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) and *Kim v. Coppin State College,* 662 F.2d 1055 (4th Cir.1981), in support of this argument is ill-founded. Both of these cases

considered the First Amendment rights of individuals authorized to be present on school property, students and faculty members, respectively. As noted above, Mr. Grattan's presence on the property was not similarly authorized. Moreover, the statute's prohibition is stated in the disjunctive. The fact that Mr. Grattan was not conducting lawful business on the premises alleviates any necessity of finding his conduct to be disruptive.

Thirdly, Mr. Grattan argues that the provision of access to school property to textbook salesmen requires access for his solicitational activity. The Court in *Perry* specifically rejected this argument. 460 U.S. at 47, 103 S.Ct. at 956. The activity of textbook salesmen, like the activities of civic organizations cited in *Perry,* is properly characterized as educationally related. The State and the School Board may provide access for such activities while prohibiting non-educational activities such as union solicitation.

■ Finally, the Appellant argues that his solicitational activities deserve First Amendment protection because of their political content. He argues that the flyers distributed were conveying the political message that the rival BTU had become too close to Mayor Schaefer to continue to vigorously represent the interests of teachers. We agree with the finding of the district court that the message intended to be conveyed was not political in nature merely because of the depiction of a public

---

**2.** In Part II of this opinion we address Appellant's argument that access to school premises must be provided to union representatives during the conduct of union elections. Title 13A.02.08.02(D) of the Code of Maryland Regulations provides "[r]epresentatives of competing organizations shall be permitted to meet with employees, individually or in groups on school premises ... during non-duty breaks or immediately preceding or following the work day." MD.REGS.CODE tit. 13A.02.08.02(D) (1981). In holding that in-person union solicitation on school property is not a protected activity under the United States Constitution, we do not deny the State's power to authorize limited access to school property for non-educational purposes

such as union elections. Furthermore, the Court does not attempt to reconcile the State's regulations pertaining to union elections with the statute in question. As noted *infra,* this issue does not arise under the facts of the present case. Finally, the Court notes that Mr. Grattan has not alleged that less intrusive means of promoting the union were unavailable to him. *See Perry* at 53, 103 S.Ct. at 959; *National Labor Relations Board v. Babcock & Wilcox Co.,* 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed. 975 (1956) (barring non-employee union organizers from distributing union literature on privately owned company parking lot does not violate the National Labor Relations Act where other channels of communication available).

officer on the flyer. As was noted by the court below, the message was "a limited-audience organizational one—i.e., support another teachers' union which will not be so cozy with the mayor," which did not address the concerns of the public at-large.

## II.

As a second ground for error in the trial court's decision, Mr. Grattan maintains that the School Board's exclusion of his solicitational activities was inconsistent with Maryland's statutory and regulatory scheme governing the selection of an exclusive bargaining representative by the school's teachers. Specifically, Mr. Grattan alleges that the Code of Maryland Regulations, Title 13A.02.08.02 presumes a right to in-person solicitation by union representatives and mandates equal treatment of organizations competing for recognition as the teachers' exclusive bargaining agent. MD.REGS.CODE tit. 13A.02.08.02 (1981).

The trial court did not explicitly address this argument. However, as was aptly noted by the Appellee and suggested in the very title of the provisions in question, application of the cited regulations is limited to situations involving conduct of a union election. At no time has Mr. Grattan alleged that his activities were conducted in the course of an authorized election. Accordingly, this Court refrains from addressing the scope of Mr. Grattan's legal rights in the context of a union election.

## III.

Mr. Grattan alleges that the trial court erred in failing to address his claim under Article 40 of the Declaration of Rights of Maryland's Constitution. Accordingly, he asks this Court to afford the Maryland Court of Appeals an opportunity to construe the parameters of union solicitation in the public schools in light of the right to freedom of speech as conferred by the state constitution. We deny the Appellant's request on grounds that it is not well-founded.

A federal court's certification of a question of state law to that state's highest court is appropriate when the federal tribunal is required to address a novel issue of local law which is determinative in the case before it. *Lehman Brothers v. Schein,* 416 U.S. 386, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974); MD.CTS. & JUD.PROC.CODE ANN. § 12–601 (1984). In the present case, we have determined that the plaintiff does not have a valid claim for relief under federal law. It would be illogical for this Court to retain jurisdiction over plaintiff's state constitutional claim for the sole purpose of allowing Maryland's highest court to rule on this claim. We, therefore, perceive no need to exercise our discretion to invoke the certification process.

The Appellant does not allege that the trial court erred in dismissing his pendent claims for emotional distress, malicious prosecution and false imprisonment. Accordingly, we affirm the lower court's dismissal of such claims without discussion.

The trial court granted summary judgment for defendants below based on its finding that (a) plaintiff below failed to demonstrate that there was a dispute as to material facts presented, and (b) there was but one correct conclusion to be drawn from those facts. *Carroll v. United Steelworkers of America,* 498 F.Supp. 976, 978 (D.Md.), *aff'd,* 639 F.2d 778 (4th Cir.1980). For the reasons set forth above, the decision of the district court is

AFFIRMED.