Thomas Frances GIBBONS, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–88–01170–CR.

Court of Appeals of Texas,
Dallas.

July 31, 1989.

Larry Finstrom, Dallas, for appellant.

Kathleen A. Walsh, Dallas, for appellee.

Before McCLUNG, THOMAS and OVARD, JJ.

OVARD, Justice.

Thomas Frances Gibbons appeals a conviction of criminal trespass. After a non-jury trial, the court assessed punishment at ninety days in the county jail, probated for a period of six months. A special condition of probation is that Gibbons will not go onto or within 200 yards of the property of the First Baptist Church of Dallas. In two points of error, Gibbons asserts that, under his constitutional rights to free speech, the trial court erred in convicting Gibbons of criminal trespass and imposing unreasonable conditions of probation. We overrule both points of error and affirm the judgment of the trial court.

## FACTS

On Sunday, May 31, 1987, at approximately 12:30 p.m., Gibbons was found protesting on two streets which are adjacent to and privately owned by the First Baptist Church of Dallas. Gibbons was carrying a sign and making statements regarding "taxes" and "rights" to pedestrians and people leaving the church services. He was first confronted by a church security guard on a private street owned by the church and adjacent to the south side of the church, San Jacinto Plaza (S.J. Plaza), and he was asked by the security guard to leave church property. When Gibbons refused to leave the church property, the guard called the Dallas Police Department.

Before the police department responded to the call, Gibbons left S.J. Plaza and walked around the boundaries of the church property until he reached another private street owned by the church, San Jacinto Place (S.J. Place), which is adjacent to the north side of the church. Upon re-entering church property, Gibbons was restrained by two church security guards and detained inside a church building to await the arrival of the Dallas police. Testimony indicated that there were signs posted on S.J. Place which stated: "Church Parking Only," "Private Drive," "Do Not Enter," and "Unauthorized Vehicles Will Be Towed Away."

At trial, testimony was presented that when a guard confronted Gibbons on S.J. Plaza, he warned Gibbons to stay off church property. The guard then described the church property boundaries to Gibbons. The boundary description included S.J. Place. In addition, in a previous incident on May 10, a guard confronted Gibbons while he was on S.J. Plaza and warned him to stay off church property. Again, the guard described the church property boundaries to Gibbons.

Testimony showed that during the daytime hours, S.J. Place is open to access by the general public. Church security guards generally do not stop people from crossing the street unless they approach church buildings or engage in activities which are against church policy. Church policy prohibits picketing or demonstrating on S.J. Place.

### 1. CONSTITUTIONAL ISSUES

In his first point of error, Gibbons complains that the court erred in convicting him of criminal trespass because he was exercising his constitutional rights to free speech under the first amendment of the United States Constitution and article 1, section 8 of the Texas Constitution.

### a. U.S. CONSTITUTION

■ In addressing Gibbons' constitutional right under the first amendment to the United States Constitution, we must examine the Supreme Court's rulings on first amendment rights as they pertain to private property. It is well established that the public's first amendment rights will be protected on public streets and sidewalks. *See Flower v. United States*, 407 U.S. 197, 198, 92 S.Ct. 1842, 1843, 32 L.Ed.2d 653 (1972). However, the line of cases that sets forth this right deals strictly with public areas. *Id.* The question before this Court is the extent to which speech should be protected under the first amendment when it takes place on property that is privately owned.

As early as 1946, the Supreme Court, in *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946), was asked to balance the right to freedom of expression against private property rights. The court held that since the privately owned company town duplicated all the functions of a private municipality, first amendment rights would be protected to the same extent that they would be in a public town. In upholding the freedom of expression on the streets of the privately owned company town, the court emphasized that the town was the functional equivalent of a municipality, and, as a result, there was no appro-priate publicly owned forums available for the exercise of speech. *Id.* 326 U.S. at 506–07, 66 S.Ct. at 278–79, 90 L.Ed. at 268–69.

Twenty-two years later, the Supreme Court was again confronted with a conflict between freedom of speech and private property rights in *Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc.*, 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968). In *Logan Valley*, the plaintiffs sought to picket a store in a privately owned shopping center mall. The court was influenced by the relation of the picketer's speech to the activities of the shopping center. The speech in question concerned a particular store in the shopping center and was aimed to influence the customers of that one store. The court concluded that a privately owned shopping center mall was the functional equivalent of a business district in a municipality. *Id.* at 325, 88 S.Ct. at 1612. The court further analogized the business block in *Logan Valley* to the municipality in *Marsh* and held that they were functionally the same. As a result, the court held that the first amendment right to freedom of speech must be upheld in a privately owned shopping center mall. *Id.*

In the 1972 case of *Lloyd Corp., LTD. v. Tanner*, 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972), the Supreme Court refused to extend first amendment protection to protesters distributing anti-war handbills within a privately owned shopping mall. The court reasoned that the protesters were not entitled to first amendment relief since the owners of the mall had a right to restrict the purposes for which the public used the mall. *Id.* at 570, 92 S.Ct. at 2229. The court noted that citizens in general, and not merely the patrons of the mall, were targets of the communication, and that public streets surrounding the mall provided an effective alternate area in which the plaintiffs could exercise their first amendment rights. *Id.*

The Supreme Court again rejected extending first amendment protection to private property in 1976. In *Hudgens v. NLRB*, 424 U.S. 507, 96 S.Ct. 1029, 47

L.Ed.2d 196 (1976), the Supreme Court held that employees had no first amendment right to enter a privately owned shopping center in order to advertise their strike against a retail store located therein. *Hudgens* reasoned that the amount of state action involved in *Logan Valley* and in *Lloyd* was basically the same, and that the rationale of *Logan Valley* did not survive the *Lloyd* decision. *Id.* at 518–19, 96 S.Ct. at 1035–36. The court further noted that if a shopping center is the functional equivalent of a municipality, as *Logan Valley* held, then the first amendment would not allow control of speech to turn upon the speech's content because a municipality cannot discriminate in applying first amendment rights on the basis of content. *Id.* at 521, 96 S.Ct. at 1037. *Hudgens* distinguished *Marsh* on the basis that the state had delegated a larger number of functions to the company which owned the town. *Hudgens* interpreted *Marsh* as holding that, in order to be treated as though it were public, private property must have taken on all the attributes of a municipality. *Id.* As a result, the *Hudgens* court found that, under the present state of the law, the constitutional guarantee of free speech is not applicable to a privately owned shopping center.

In a case in which the facts closely mirror those of the case at hand, the United States District Court of California in *International Society for Krishna Consciousness v. Reber*, 454 F.Supp. 1385 (C.D.Cal. 1978), held that, under *Hudgens*, members of the International Society for Krishna Consciousness, Inc. (ISKCON) were not protected by the first amendment while on a privately owned street. In *Reber*, the street in question was privately owned by Knott's Berry Farm (KBF). In addition to the street, KBF owned the surrounding land and used it as an amusement park. At various times of the year, KBF closed the street to vehicular traffic. The KBF street was connected to a public street, which provided the ISKCON members with an alternate forum in which to exercise their first amendment rights. However, the ISKCON members chose to enter the KBF privately owned street to distribute religious literature and solicit for financial contributions for their organization. After ignoring warnings by KBF security guards to leave the private property, the ISKCON members were arrested for trespassing. The *Reber* court held that, while the private segment of the street owned by KBF was the functional equivalent of a public street, it was not the functional equivalent of a municipality. *Id.* at 1390. Consequently, the court refused to extend first amendment protection to the ISKCON members who were trespassing on the KBF owned street.

██ As in *Reber*, The First Baptist Church in this case privately owns a street, S.J. Place, bordered on both sides by church property. The church retains control of the privately owned street at all times and reserves the right to close it off to the public at any time. Gibbons, like the ISKCON members, ignored warnings to stay off the church's private property and was arrested for criminal trespass. Based on the line of Supreme Court cases addressing the protection of the first amendment with regard to private property, we hold that S.J. Place is not the functional equivalent of a public street or a municipality, as existed in *Marsh*. Accordingly, S.J. Place does not fall within the umbrella of first amendment protection as did the company-owned town in *Marsh*. We hold that, under the first amendment, freedom of expression is not protected on a privately owned street and, thus, is not protected on S.J. Place.

### b. TEXAS CONSTITUTION

██ In addressing Gibbons' constitutional right under the Texas Constitution, we must examine how Texas courts interpret the extent to which the Texas Constitution grants freedom of expression. The United States Supreme Court has determined that a state may adopt in its own constitution liberties more expansive than those conferred by the federal constitution. *Pruneyard Shopping Center v. Robbins*, 447 U.S. 74, 81, 100 S.Ct. 2035, 2040, 64 L.Ed.2d 741 (1980). However, Texas constitutional provisions guaranteeing free-

dom of expression are coextensive with the federal guarantees, and we will apply the same analysis and principals of construction in interpreting them. *Reed v. State*, 762 S.W.2d 640, 644 (Tex.App.—Texarkana 1988, pet. ref'd). In *Reed*, the court held that the extent to which government can control access to its property for expressive purposes depends upon the nature of the forums. *Id.* The forums have been divided into three categories: (1) public forums, those which have traditionally been devoted to assembly and public debate; (2) limited public forums, those which government has voluntarily or intentionally opened for use by the public; and (3) nonpublic forums, those which neither by tradition nor government action have become forums of public communication. *Id.* at 643.

In a public forum, speech cannot be suppressed unless it is necessary to achieve a compelling governmental interest. Speech in a limited public forum is protected to the same extent as in a traditional public forum, as long as the forum remains open. Access to a limited public forum may be restricted to specific entities which have previously been allowed. In a nonpublic forum, speech may be restricted as long as restriction is reasonable and is not an attempt to suppress freedom of expression because of opposition to the speaker's views. *Id.* at 643–44.

 In the case at hand, the record establishes that Gibbons' activities were conducted in a nonpublic forum. By virtue of being a privately owned street, S.J. Place is not an area which, by tradition, has been devoted to public assembly or debate. Although the church permitted the general public access to S.J. Place, there is no evidence that it had ever been opened by the church as a place for public expressive activity. On the contrary, church policy clearly bans picketing and other expressive activities on all its property, including S.J. Place. In addition, an area is not converted into a limited public forum simply because members of the public are permitted to come and go at will. *Reed*, 762 S.W.2d at 644.

Furthermore, the purpose of the criminal trespass statute applied in this case is not to regulate speech. Its purpose is to regulate conduct. Section 30.05 of the Texas Penal Code provides in part as follows:

(a) A person commits an offense if he enters or remains on property or in a building of another without effective consent and he:

\* \* \* \* \* \*

 (2) received notice to depart but failed to do so.... TEX.PENAL CODE ANN. § 30.05 (Vernon Supp.1989). A general trespass statute, such as the one at hand, may be constitutionally applied, even to those who trespass to communicate, so long as it is applied without discrimination and is not used to purposefully suppress speech. *United States v. Albertini*, 472 U.S. 675, 688–89, 105 S.Ct. 2897, 2906–07, 86 L.Ed.2d 536 (1985); *Rains v. Mercantile Nat'l Bank at Dallas*, 599 S.W.2d 121, 124 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r. e.). There is no evidence that Gibbons was asked to leave because of the message on the sign he was carrying or the content of his statements. Evidence indicated that the church did not even know what kind of message Gibbons was trying to convey. The church simply stated that it did not want Gibbons trespassing upon its property while engaging in activities which are against church policy.

In this case, the enforcement of the criminal trespass statute did not violate Gibbons' right of expression under either the United States or the Texas constitutions. We overrule Gibbons' first point of error on both counts.

## 2. UNREASONABLE PROBATION CONDITIONS

 In his second point of error, Gibbons complains that the trial court erred in imposing unreasonable conditions for probation. The court sentenced Gibbons to ninety days' confinement in the county jail, to be probated for a period of six months. In addition to the statutory conditions of probation, the court added a special condition that: "The defendant will not go onto or within 200 yards of the

property of the First Baptist Church, Dallas County,...." Gibbons contends that the special condition is overbroad and violates his constitutional right to freedom of action. It has long been established that the trial court is not limited to statutorily enumerated probation conditions. *Hernandez v. State*, 556 S.W.2d 337, 342 (Tex. Crim.App.1977); TEX.CODE CRIM.PROC. ANN. art 42.12 § 6 (Vernon Supp.1986). The court's discretion to add probation conditions is a wide one, limited only by the requirement that such conditions be reasonable. *Id.* at 342–43. Reasonable conditions of probation are those that contribute significantly to the rehabilitation of the convicted person and to the protection of society. *Pequeno v. State*, 710 S.W.2d 709, 710 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd). Furthermore, it is within the trial court's constitutional dictate to limit the defendant's rights through probation conditions. *See Hoffart v. State*, 686 S.W.2d 259, 264 (Tex.App.—Houston [1st Dist.] 1985, pet. ref'd), *cert. denied*, 479 U.S. 824, 107 S.Ct. 95, 93 L.Ed.2d 46 (1986); *see also Salinas v. State*, 514 S.W.2d 754, 755 (Tex. Crim.App.1974); *Clay v. State*, 710 S.W.2d 119, 120 (Tex.App.—Waco 1986, no pet.).

■ The condition of probation of which Gibbons complains was clearly stated to enable Gibbons to understand the action required of him. We hold that, in light of the circumstances, it is within the trial court's discretion to prohibit Gibbons from coming within 200 yards of the church's property. Gibbons was found picketing on the church's property on May 10th and 31st. Gibbons was warned to stay off the property and told the boundaries of the church's private property on both dates.

The special condition of probation is reasonable in that it significantly contributes to Gibbons's rehabilitation by removing from him the temptation of trespassing on the church's property. The condition also insures that those persons legally using the property will be protected from any unlawful interference by Gibbons. We overrule

Gibbon's second point of error and affirm the trial court's judgment.