Clifford Louis ZARSKY, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–91–111–CR.

Court of Appeals of Texas,
Corpus Christi.

Feb. 20, 1992.
Rehearing Overruled March 26, 1992.

Clifford L. Zarsky, Gene A. Garcia, Corpus Christi, for appellant.

Carlos Valdez, County Atty., Corpus Christi, for appellee.

Before BISSETT,[1] DORSEY and HINOJOSA, JJ.

## OPINION

BISSETT, Justice, assigned.

A jury found appellant guilty of criminal trespass, and the trial court assessed his punishment at thirty days in jail. Appellant asserts that his conviction violates the free-speech and assembly provisions of the United States and Texas Constitutions, that the evidence is insufficient to sustain the conviction, and that the trial court erred in excluding evidence and in failing to submit his requested instructions to the jury. We affirm.

Appellant was arrested at the Stonegate Professional Office Complex in Corpus Christi (Stonegate), while anti-abortion protestors sat on a walkway outside an abortion clinic, blocking its doors. Appellant, who was described as part of the protest leadership, was arrested as he stood in the parking lot, about eight feet from one of the clinic's doors, next to a pole which supported the roof covering the walkway. Appellant was not personally blocking the clinic's door. Less than a half-hour before his arrest, William Hopkins, the owner of the complex, notified appellant at a face-to-face meeting to leave the premises. Appellant was charged with violating Texas' trespass law by remaining on Hopkins' property without Hopkins' consent after he had notice to depart but failed to do so. *See* Tex.Penal Code Ann. § 30.05(a)(2) (Vernon 1989).

In his first point of error, appellant contends that his activities at the clinic were protected under the First Amendment of

the United States Constitution and under Article I, §§ 8, 27, and 29 of the Texas Constitution.[2]

We find the federal constitutional issue resolved by *Hudgens v. National Labor Relations Bd.*, 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976). In *Hudgens*, warehouse employees of a company with a retail store in a shopping center were found to have no First Amendment right to enter the shopping center to advertise their strike against the company. *Hudgens* followed *Lloyd Corp. v. Tanner*, 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972), in which the Court held that persons protesting the Vietnam War did not have a First Amendment right to distribute handbills in a large shopping center. In *Hudgens*, the Court reiterated that it was rejecting the rationale of and overruling *Amalgamated Food Employees Union v. Logan Valley Plaza*, 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968), in which the Court had held that peaceful picketers in a large shopping center were protected by the First Amendment. Although appellant argues that *Hudgens* and *Lloyd* did not overrule *Logan Valley*, the Supreme Court has acknowledged that *Logan Valley* has been overruled. *See Pruneyard Shopping Center v. Robins*, 447 U.S. 74, 81, 100 S.Ct. 2035, 2040, 64 L.Ed.2d 741 (1980); *Flagg Bros. v. Brooks*, 436 U.S. 149, 159, 98 S.Ct. 1729, 1735, 56 L.Ed.2d 185 (1978).

 Under the First Amendment to the United States Constitution, before a private property owner can be subjected to another's free-speech rights, the privately-owned property must assume to some significant degree the functional attributes of

---

**1.** Assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1988).

**2.** Article 1, § 8 of the Texas Constitution provides:

Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press....

Article 1, § 27 provides:

The citizens shall have the right, in a peaceable manner, to assemble together for their

common good; and apply to those invested with the powers of government for redress of grievances or other purposes, by petition, address or remonstrance.

Article 1, § 29 provides:

To guard against transgressions of the high powers herein delegated, we declare that everything in this "Bill of Rights" is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions, shall be void.

public property devoted to public use. *Central Hardware Co. v. National Labor Relations Bd.*, 407 U.S. 539, 547, 92 S.Ct. 2238, 2243, 33 L.Ed.2d 122 (1972); *see Hudgens*, 424 U.S. at 516, 96 S.Ct. at 1034; *Gibbons v. State*, 775 S.W.2d 790, 793 (Tex. App.—Dallas 1989), *pet. ref'd*, 815 S.W.2d 739 (Tex.Crim.App.1991) (not yet reported); *Hoffart v. State*, 686 S.W.2d 259, 262 (Tex. App.—Houston [14th Dist.] 1985, pet. ref'd); *Rains v. Mercantile Nat'l Bank*, 599 S.W.2d 121, 123–24 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.). The evidence in the instant case shows that the property was generally used for commerce and that on one prior occasion, pro-choice demonstrators had gathered at the site. Hopkins had not given his permission for that demonstration. There is no evidence that the office complex assumed the functional attributes of public property devoted to public use. We find no First Amendment protection for appellant's activities.

 We thus turn to the protections afforded appellant by the Texas Constitution.[3] The Texas Constitution's affirmative grant of free speech is more broadly worded than the First Amendment's proscription of Congress from abridging freedom of speech. *O'Quinn v. State Bar of Texas*, 763 S.W.2d 397, 402–403 (Tex.1988). While no Texas case has held that Texas must grant broader speech freedoms than the First Amendment, appellant urges us to do so, relying in large part on California's decision to interpret a provision of its Constitution broader than its federal counterpart.[4] *See Robins v. Pruneyard Shopping Center*, 23 Cal.3d 899, 153 Cal.Rptr. 854, 592 P.2d 341 (1979). The California and Texas Constitutional provisions are almost identical.

In *Robins*, the Supreme Court of California concluded that its State Constitution protected speech and petitioning, reasonably exercised, in a *large*, privately-owned shopping center. *Robins*, 592 P.2d at 347.

Our research reveals that a number of states have constitutional provisions worded similarly to those of Texas and California. Only a handful of those states have adopted positions consistent with California's decision in *Robins. See Batchelder v. Allied Stores Intern. Inc.*, 388 Mass. 83, 445 N.E.2d 590 (Sup.Jud.Ct.—Essex 1983); *Alderwood Assocs. v. Washington Environmental Council*, 96 Wash.2d 230, 635 P.2d 108 (1981); *State v. Schmid*, 84 N.J. 535, 423 A.2d 615 (1980).

Most states having constitutions similar to California's and Texas' have refused to adopt California's approach. *See Bock v. Westminster Mall Co.*, 797 P.2d 797 (Colo. App.1990, cert. granted); *Fardig v. Municipality of Anchorage*, 785 P.2d 911 (Alas. App.1990); *Fiesta Mall Venture v. Mecham Recall Comm.*, 159 Ariz. 371, 767 P.2d 719 (App.1988, rev. denied); *Jacobs v. Major*, 139 Wis.2d 492, 407 N.W.2d 832 (1987); *Western Pennsylvania Socialist Workers 1982 Campaign v. Connecticut Gen. Life Ins. Co.*, 512 Pa. 23, 515 A.2d 1331 (1986); *Woodland v. Michigan Citizens Lobby*, 423 Mich. 188, 378 N.W.2d 337 (1985); *Shad v. Smith Haven Mall*, 66 N.Y.2d 496, 498 N.Y.S.2d 99, 488 N.E.2d 1211 (1985); *Cologne v. Westfarms Assocs., Inc.*, 192 Conn. 48, 469 A.2d 1201 (1984). In these states, the business property owner has a right to exclude third-parties from exercising forms of speech on the property.

The few states which have followed *Robins* to permit an exercise of free speech at large shopping malls have refused to extend the same speech protections to protestors at abortion clinics. *See City of Sunnyside v. Lopez*, 50 Wash.App. 786, 751 P.2d 313 (1988); *State v. Brown*, 212 N.J.Super. 61, 513 A.2d 974 (1986); *Brown v. Davis*, 203 N.J.Super. 41, 495 A.2d 900 (1984); *Ingram v. Problem Pregnancy of Worcester, Inc.*, 396 Mass. 720, 488 N.E.2d

---

**3.** A state may adopt by its own constitution liberties more expansive than those conferred by the federal constitution. *Pruneyard Shopping Center v. Robins*, 447 U.S. 74, 81, 100 S.Ct. 2035, 2040, 64 L.Ed.2d 741 (1980).

**4.** Although two Texas cases have held that the Texas Constitution is interpreted co-extensively with the First Amendment, we will address the merits of appellant's complaint. *Gibbons*, 775 S.W.2d at 793–94; *Reed v. State*, 762 S.W.2d 640, 644 (Tex.App.—Texarkana 1988, pet. ref'd).

408 (1986). In *Sunnyside*, the Court held, "the center is private property and its owners may bar the exercise of free speech regardless of its nature or whether it is possible to reasonably regulate it." *Sunnyside*, 751 P.2d at 319. Even California has refused to extend *Robins* to private abortion clinics. *See Allred v. Shawley*, 232 Cal.App.3d 1489, 284 Cal.Rptr. 140, 143 (Dist. 4, 1991); *Planned Parenthood of San Diego and Riverside Counties v. Wilson*, 282 Cal.Rptr. 760, 766 (Dist. 4, 1991).

Our review thus shows that no state with a constitution similar to ours has been willing to extend speech protections to the extent which appellant advocates. In the states which have recognized speech protections greater than the First Amendment, all have declined to extend such protections to property like that in the present case. The courts, in rejecting the free-speech claims, have considered factors such as the size of the shopping center, the amount of disruption to the business entities caused by the speech activity, the degree of public invitation extended by the center, the degree that the property has been dedicated to public use, safety matters, and the owner's property rights. *See, e.g., Allred*, 284 Cal.Rptr. at 142–147.

■ In considering the factors used by the states above, we find no reason to protect appellant's speech or conduct under the Texas Constitution. The Stonegate complex is substantially different from the large shopping malls considered in other states. The Stonegate complex contained three buildings which were subdivided to provide office space for about a dozen tenants who shared a common parking lot. Stonegate is a modest business center, whose tenants are primarily engaged in medical or real estate businesses. Stonegate does not appear to have any attributes of a "town square." In *Robins*, by contrast, the Pruneyard Center was a large shopping mall which catered to approximately 25,000 persons daily. Stonegate is physically and functionally different.

We also find that appellant's conduct, and that of the protestors here, differed

substantially from the free-speech advocates in *Robins*. The speech in *Robins* was peaceful and did not interfere with the business of the center. Here, although appellant contends that he was merely standing on the complex property, not blocking the clinic's door, we find that, when viewed in context, appellant was a leader of the group which came onto Stonegate to interfere with a tenant's normal business operations. These intruders were not merely picketing, handbilling, or engaging in peaceful speech. They were sitting on the ground blocking entry to the building that housed the clinic.

■ We now turn to several specific matters raised by appellant in sub-points under point of error one. Appellant contends that because pro-choice demonstrators had met at the abortion clinic one week before his arrest, the complex was either a public forum or a limited public forum dedicated to public debate on the abortion issue. In the cases from other jurisdictions, there was no showing that the property in question was used to air pro-abortion views. Although we acknowledge the factual difference, we disagree with appellant's conclusion. Even in California, for example, "It is only when the owner of private property has created a 'forum' for the expression of ideas similar to the traditional 'town square' that members of the public are constitutionally [under the California Constitution] protected in the expression of their ideas in a manner contrary to the wishes of the property owner." *Wilson*, 282 Cal.Rptr. at 766; *see also Johnson v. Tait*, 774 P.2d 185, 190 (Alas. 1989) (tavern not same character as shopping mall so owner could exclude others); *see also Western Pennsylvania Socialist Workers 1982 Campaign*, 515 A.2d at 1335, where the Supreme Court of Pennsylvania, in a case analogous to the instant case, held that a shopping mall open to the public solely for commercial purpose is not a public forum. Another case on point is *Brown v. Davis*, 495 A.2d at 903–04, where the issue was whether a private citizen ("plaintiff"), who was charged with criminal trespass, may enter upon the parking

and work areas of a multi-business office complex ("Avenues of Commerce") to espouse an anti-abortion thesis directed to prospective patients of one of the tenants without the consent of the landlord-owner. The court held that the plaintiff was not entitled to enter defendants' private property against defendants' wishes to engage in the described expressional activity. *Id.* at 904. The court, in so holding, reasoned:

[T]he Avenues of Commerce is not the functional equivalent of a suburban shopping center, which may be characterized as an alternative to an urban downtown shopping area where the public at large is invited. The Center is normally used by employees of tenants and prospective customers visiting specific businesses for the limited services made available to them. It is not a place to which a general consumer would go to shop for personal, household or general business merchandise.

Id. 903.

While the record in this case shows that one prior pro-choice rally was held on the clinic's property, we hold that this one rally, without the owner's permission, did not transform the office complex into a "town square" for free-speech purposes.

■ Appellant further contends in support of his position that because he was arrested in a public place as defined by the Texas Penal Code his speech was protected. We disagree. The accessibility of the public to the place has no impact upon our consideration of this issue. The free-speech advocates in all of the above cases asserted their rights in "public places." The mere fact that a business is "open to the public" does not mean that the business has assumed "to some significant degree" the functional attributes of public property devoted to public use. *See Central Hardware,* 407 U.S. at 547, 92 S.Ct. at 2243. We can find no state that has granted free-speech rights to a person merely because private property was used in a public manner.

■ Appellant next contends that the trespass statute, as applied to him, is unconstitutional because it significantly impairs protected speech. We find this point without merit, as it is premised on a finding that his conduct was protected. As we have found that it was not, we also find this argument without merit. *See Right to Life Advocates, Inc. v. Aaron Women's Clinic,* 737 S.W.2d 564 (Tex.App.—Houston [14th Dist.] 1987); *Hoffart v. State,* 686 S.W.2d 259, 262 (Tex.App.—Houston [14th Dist.] 1985, pet. ref'd), *cert. denied,* 479 U.S. 824, 107 S.Ct. 95, 93 L.Ed.2d 46 (1986).

We find no merit to appellant's first point, and it is overruled.

In his second point of error, appellant contends the evidence is insufficient to support his conviction. In reviewing the sufficiency of the evidence, an appellate court views the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Baugh v. State,* 776 S.W.2d 583, 585 (Tex.Crim.App.1989); *Butler v. State,* 769 S.W.2d 234, 239 (Tex. Crim.App.1989).

■ Specifically, appellant asserts that because he had the permission of a tenant to come onto the property for business purposes, he was not on the property without consent. The evidence showed that Stonegate housed about a dozen separate businesses. Bryan Moore leased an office in the center for his real estate business. Moore and appellant had business dealings in the past and apparently had an on-going periodic business relationship. The record shows that around the time of the incident appellant visited Moore at his office about once a month.

Hopkins testified that Moore, as well as any other tenant, could invite someone onto the property and allow him to park and walk on the property. The parking lot is common to all the businesses, and apparently any member of the public-at-large could enter the property to patronize any business. Appellant testified that he was going to see Moore on the morning of his arrest and was just waiting on the property when he was arrested. Thus, appellant

contends that the undisputed evidence showed that he had consent to be on the property.

In support of his position, appellant relies on *Hann v. State*, 771 S.W.2d 731 (Tex.App.—Fort Worth 1989, no pet.). In *Hann*, the defendant and the complainant had a *bona fide* dispute concerning whether the defendant had easement rights on certain property. The Court of Appeals held that because of the unsettled legal dispute, no rational trier of fact could have found that the defendant was on the property without effective consent. We do not find *Hann* controlling.

Here, Hopkins was the owner and general manager of Stonegate. He testified appellant had his consent to come onto the property for business purposes. On the morning of appellant's arrest, Hopkins approached appellant, identified himself and requested that appellant leave the property. Hopkins testified that he had the authority to take care of the property; appellant, in his testimony, acknowledged that Hopkins had the authority to ask him to leave. Appellant further testified that he was not looking for Moore when he went to the back of the property where the abortion clinic was located but instead went back to see what he could do to prevent abortions.

We find this evidence sufficient to sustain the conviction. Appellant was not prosecuted for entering the property. He was prosecuted for remaining on the property after being notified to leave. The jury was free to determine whether appellant was at the site to conduct legitimate business dealing with Moore or to engage in activities related to the abortion protest. As appellant sang with the protestors and admitted that he was at the clinic to see what he could do to prevent abortions, we find the evidence sufficient for the jury to have found that appellant's purpose was not to engage in business with Moore.

Furthermore, we find that Hopkins' direct notice to appellant to leave the premises deprived appellant of any right to be on the property at that time regardless of any past general invitation to come onto the property for business purposes. We find no *bona fide* dispute concerning appellant's right to be on the property. The evidence is sufficient to sustain the conviction. Appellant's second point of error is overruled.

In his third point, appellant contends that he was denied due process because a police officer failed to provide him with a chance to leave the property before being arrested. Appellant claims that Corpus Christi Police had a policy of arresting persons at abortion clinics only if an officer was assaulted or if a person vandalized or attempted to break into a clinic and that, as he did not fall within these criteria, his arrest did not conform to the announced police policy, and thereby violated his due process rights. We find appellant's complaint without merit.

Without regard to whether the law would support such a conclusion on those facts, we overrule appellant's point. Our review shows that appellant has misconstrued police department policy. Corpus Christi Police Chief Henry Garrett testified that the policy gave officers at the scene discretion to make arrests to keep the peace or enforce the law. Any person who pushed an officer or caused property damage, however, would be arrested. Thus, it was police department policy to arrest anyone assaulting an officer or causing property damage. Anyone not committing these acts was subject to arrest at the officer's discretion. Because appellant's point is premised on his incorrect construction that only certain violators were subject to arrest, we need not address this point any further. Appellant's third point is overruled.

In his fourth and fifth points, appellant contends that the trial court erred when it refused to submit two of his requested charges to the jury. Appellant's first requested charge defined "public place" pursuant to the Texas Penal Code and then instructed the jury to find appellant "not guilty" if they found that he through mistake formed a reasonable belief that he was in a public place and that his belief negated the culpability required

for the commission of the offense. The trial court refused to give appellant's requested charge.

"Mistake of fact" is a defense defined by the Penal Code. Tex.Penal Code Ann. § 8.02 (Vernon 1974). Section 8.02(a) provides:

It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense.

Appellant contends that the "mistake of fact" was raised by his testimony that he believed he was in a public place and that he had a right to be where he was. We find that appellant was not entitled to the requested instruction. The evidence does not show that appellant was mistaken about any *fact* which negated an element of the offense. If appellant believed that he was not trespassing because the location was a public place, that belief would have been a mistake of the law rather than a mistake of fact. The trial court instructed the jury on "mistake of law." Appellant was not entitled to the "mistake of fact" charge requested.

■ Appellant next contends that he was entitled to the following "mistake of fact" charge:

Further if you believe from the evidence that on the occasion in question the defendant committed the acts alleged, but you further believe, or you have a reasonable doubt thereof, that, at the time of the alleged acts, he had through mistake formed a reasonable belief about a matter of fact, to wit: that his continued presence on the property would not be a trespass because the alleged owner, Mr. Hopkins, did not advise the defendant that he would be arrested if he did not depart, and that said mistaken belief negated the culpability required for the commission of the offense stated in Paragraph —— of this charge, you will find the defendant not guilty.

Appellant testified that he believed his continued presence on the property was not trespass because Hopkins did not advise

him that he would be arrested if he did not depart. We do not find any evidence that appellant "formed a reasonable belief about a matter of fact which negated the kind of culpability required for the commission of the offense." The culpability required for this offense was that appellant knowingly remain on Hopkins' property without his consent after being notified to leave. Appellant was not mistaken about his continued presence on the property or the departure notice given. He was mistaken about whether he would be arrested for staying. There is a significant difference between a person believing that he is not trespassing and a person believing that he will not be arrested for trespassing. Appellant's mistaken belief that he would not be arrested did not negate the culpability required for trespass. The trial court correctly overruled appellant's requested charge.

■ In his sixth through eleventh points of error, appellant contends that the trial court erred by excluding evidence which was relevant to his defense of necessity and defense of third persons. In *Boushey v. State*, 804 S.W.2d 148, 150–153 (Tex.App.—Corpus Christi 1990, pet. ref'd), we held that a similarly situated defendant was not entitled to these defenses. *Boushey* controls the disposition of the sixth through eleventh points of error. The trial court did not err in excluding appellant's proffered evidence. Points six through eleven are overruled.

The judgment of the trial court is affirmed.