UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

R. L. JORDAN OIL COMPANY OF
NORTH CAROLINA, INCORPORATED,
        *Plaintiff-Appellant,*

        v.

BOARDMAN PETROLEUM,
INCORPORATED, a Georgia
Corporation,
        *Defendant-Appellee.*

No. 01-1296

Appeal from the United States District Court
for the District of South Carolina, at Spartanburg.
Henry M. Herlong, Jr., District Judge.
(CA-98-2892-7)

Argued: September 25, 2001

Decided: December 3, 2001

Before LUTTIG, WILLIAMS, and GREGORY, Circuit Judges.

Vacated and remanded with instructions by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Matthew A. Henderson, HENDERSON, BRANDT & VIETH, P.A., Spartanburg, South Carolina, for Appellant. William Marvin Grant, Jr., GRANT & LEATHERWOOD, P.A., Greenville, South Carolina, for Appellee. **ON BRIEF:** Joshua M. Henderson,

HENDERSON, BRANDT & VIETH, P.A., Spartanburg, South Carolina, for Appellant. R. Perry Sentell, III, KILPATRICK STOCKTON, L.L.P., Augusta, Georgia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

R.L. Jordan Oil Company of North Carolina, Inc. (Jordan Oil) appeals from the district court's decision holding that Boardman Petroleum, Inc. (Boardman) did not violate the South Carolina Unfair Trade Practices Act (UTPA), S.C. Code Ann. § 39-5-10 *et seq.* (1995 & Supp. 2000), by selling gasoline below cost to maintain a two-cent price differential with a brand name competitor. The record on appeal does not provide sufficient information for us to confirm that the district court had jurisdiction over Jordan Oil's complaint. Moreover, we believe that the novel question of state law at issue in this case is one that would be best resolved by the Supreme Court of South Carolina. Accordingly, we vacate the district court's judgment and remand with instructions to confirm the existence of subject matter jurisdiction and, if jurisdiction exists, to certify the question of state law at issue in this case to the Supreme Court of South Carolina.

I.

Both Jordan Oil and Boardman operated convenience stores in the Southeast. Jordan Oil, incorporated in South Carolina, operated approximately fifty-eight "Hot Spot" convenience stores in South Carolina, North Carolina, and Georgia. Boardman, incorporated in Georgia, operated approximately seventy "Smile Gas" stores in the Southeast; approximately twenty-eight of those were located in South Carolina.

Two of Jordan Oil's Hot Spot convenience stores were located in Spartanburg County, South Carolina, along Interstate Highway 26, one at the intersection with U.S. Highway 221 and the other at U.S. Highway 292. Both of these Hot Spot convenience stores were located within five miles of Smile Gas convenience stores operated by Boardman. The present controversy arises out of a price war involving these four stores.

In July 1998, Jordan Oil began selling Shell brand gasoline at its Hot Spot convenience stores. Not long after the Shell logo and colors went up at Jordan Oil's stores, Boardman lowered the price of regular unleaded gasoline at its Smile Gas stores, setting it at two cents per gallon below the price of the Shell brand gasoline. Jordan Oil responded with its own price reduction, matching Boardman's prices. Boardman, however, lowered its prices again, reestablishing a two-cent per gallon price differential. This cycle of price adjustments continued downward until both parties were selling gas below cost. The parties continued to sell below cost until early October 1998.

## II.

On September 2, 1998, Jordan Oil filed a complaint in state court alleging that Boardman, in violation of the UTPA, sold gasoline below cost, causing economic injury to Jordan Oil. Jordan Oil sought both injunctive relief and treble damages but did not enumerate its actual damages in its complaint.

On October 2, 1998, Boardman removed the case to the United States District Court for the District of South Carolina. Boardman filed an answer and a counterclaim alleging that Jordan Oil had violated the UTPA and seeking treble damages for the economic injury caused by Jordan Oil. Boardman later estimated that it lost $49,000 on the sale of regular gasoline during the period that both parties were selling below cost.

In its answer, Boardman argued that section 325 of the UTPA, S.C. Code Ann. § 39-5-325 (1995 & Supp. 2000), violated the due process of law provision of the South Carolina Constitution. S.C. Const. Art. 1, § 3. No state court had addressed whether this provision of the UTPA violated the South Carolina Constitution. The district court,

therefore, certified this question to the Supreme Court of South Carolina. The Supreme Court of South Carolina adopted the "reasonable relationship standard" for reviewing challenges to state statutes on substantive due process grounds. *See R.L. Jordan Co. v. Boardman Petroleum, Inc.*, 527 S.E.2d 763, 765 (S.C. 2000). Prior to this decision, South Carolina had applied the substantive due process analysis employed by the United States Supreme Court during the *Lochner* era. *See Lochner v. New York*, 198 U.S. 45 (1905).

Upon remand to the district court, the parties agreed to forgo a trial by stipulating to facts. Based upon these stipulated facts, the district court entered judgment in favor of Boardman on December 8, 2000. The district court concluded that Boardman's conduct was not covered by the UTPA because the UTPA did not apply to independent gasoline retailers and furthermore, even if Boardman's conduct were covered under the UTPA, Boardman was not in violation because the statute allows a retailer to sell below cost to "meet competition."

## III.

Before we reach the merits of Jordan Oil's appeal, we first must determine whether diversity jurisdiction is proper.[1] To satisfy the requirements of federal diversity jurisdiction, a civil action must be between "citizens of different States" and the amount in controversy must exceed $75,000. 28 U.S.C.A. § 1332(a)(1) (West 1993 & Supp. 2001).

Looking first at the diversity of citizenship requirement, it is clear from the facts above that the parties, both corporations, were incorporated in different states, Jordan Oil in South Carolina and Boardman in Georgia. In addition to its state of incorporation, however, a corpo-

---

[1]Although neither party addressed this issue, we are required to clarify subject matter jurisdiction to determine whether we have the power to hear the case. *Long v. Silver*, 248 F.3d 309, 314 n.2 (4th Cir. 2001); *see also Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 442 n.4 (4th Cir. 1999)("[Q]uestions of subject matter jurisdiction must be decided 'first because they concern the court's very power to hear the case.'") (quoting 2 James Wm. Moore et al., Moore's Federal Practice § 12.30[1] (3d ed. 1998)).

ration is also a citizen "of the State where it has its principal place of business." 28 U.S.C.A. § 1332(c)(1). There are two methods to ascertain the principal place of business of a corporation. "One approach makes the 'home office,' or place where the corporation's officers direct, control, and coordinate its activities, determinative. The other looks to the place where the bulk of corporate activity takes place." *Mullins v. Beatrice Pocahontas Co.*, 489 F.2d 260, 262 (4th Cir. 1974). These tests have been termed the "nerve center test" and the "place of operations test," respectively. *Peterson v. Cooley*, 142 F.3d 181, 184 (4th Cir. 1998). We "have endorsed neither [test] to the exclusion of the other." *Id*; *see also Commissioner of Internal Revenue v. Soliman*, 506 U.S. 168, 191 n.14 (1993) (Stevens, J., dissenting) (recognizing that "some courts regard[ ] the home office as the principal place of business and others regard[ ] it as the place where the principal operations of the corporation are conducted").

At oral argument, the parties stated that they were unaware of whether the district court had made a determination concerning their principal places of business. The issue of subject matter jurisdiction, however, is not affected by the parties' inattention because the "parties cannot waive lack of subject matter jurisdiction by express consent, or by conduct, or even by estoppel . . . ." 13 Charles Alan Wright et al., Federal Practice & Procedure § 3522 (1984). *Accord Insurance Corp. of Ireland, Ltd. v. Companie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("[N]o action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant, . . . principles of estoppel do not apply, . . . and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings."). Therefore, it must be determined, for example, whether Boardman's activities in South Carolina, constitute the bulk of its operations, which would destroy diversity if the place of operations test applies.

We also are unable to determine, based on the facts before us, whether the amount in controversy requirement has been met. Removal is authorized for "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C.A. § 1441. The issue, therefore, is whether Jordan Oil has alleged that more than $75,000 is in controversy. Jordan Oil, in

its complaint, did not specify its alleged damages.[2] According to the stipulated facts, Boardman lost approximately $49,000 on the sale of regular unleaded gasoline. Combining sales from all grades, however, the Boardman stores operated at a profit. We do not reach the issue of how Boardman's overall economic gain affects its claim for damages because it appears, although we have not decided, that Boardman's counterclaim may not be used in calculating the amount in controversy. *See* 14B Charles Alan Wright et al., Federal Practice and Procedure § 3725 (3d ed. 1998) ("The traditional rule has been that no part of the required jurisdictional amount can be met by considering a defendant's counterclaim."). *But see id.* ("There are cases allowing and cases denying removal on the basis of a compulsory counterclaim."). The parties also stipulated that Jordan Oil paid on average three cents per gallon more than Boardman for the gasoline it retailed and that Jordan Oil lowered its prices to match Boardman's price. The lack of any information on Jordan Oil's sales, however, prevents this court from determining whether the amount in controversy was sufficient for diversity jurisdiction.[3]

To ensure that the requirements for diversity jurisdiction are satisfied, we must remand to the district court to make the appropriate findings of fact to enable it to ascertain, using one of the two methods outlined above, the principal place of business of each party and to determine the amount in controversy.

## IV.

We now turn to the merits of Jordan Oil's appeal, which will be relevant only if the district court finds that diversity jurisdiction exists. Jordan Oil argues that the state law issue in this case, interpre-

---

[2]Boardman has the burden of establishing that the amount in controversy is jurisdictionally sufficient. *See Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) ("The burden of establishing federal jurisdiction is placed upon the party seeking removal.").

[3]When calculating the amount in controversy, the district court should consider any special or punitive damages, such as treble damages, available to Jordan Oil under the UTPA. *See Saval v. BL Ltd.*, 710 F.2d 1027, 1033 (4th Cir. 1983); 14B Charles Alan Wright et al., Federal Practice and Procedure § 3702 (3d ed. 1998).

tation of the UTPA, is both novel and dispositive and therefore should be certified to the Supreme Court of South Carolina. We agree.

In *Grattan v. Board of School Commissioners*, 805 F.2d 1160, 1164 (4th Cir. 1986), we explained that "[a] federal court's certification of a question of state law to that state's highest court is appropriate when the federal tribunal is required to address a novel issue of local law which is determinative in the case before it." *See also Langley v. Pierce*, 993 F.2d 36, 37-38 (4th Cir. 1993) ("Because the resolution of the contentions of the parties is a matter of South Carolina law, and it appears to us that there is no controlling precedent on point in the decisions of the Supreme Court of South Carolina, we believe [it] proper to certify to the Supreme Court of South Carolina for decision the question in this case under S.C. App. Ct. R. 228.").

The UTPA provides, in pertinent part, the following:

> Except as otherwise permitted to meet competition as provided by this chapter, it is declared an unfair trade practice and unlawful for any person who is in the retail business of selling motor fuel to sell motor fuel of like grade and quality at retail at a price which is below the cost of acquiring the product plus taxes and transportation where the intent or effect is to destroy or substantially lessen competition or to injure a competitor.

S.C. Code Ann. § 39-5-325(A). Whether or not Boardman engaged in an unfair trade practice when it sold regular gasoline below cost depends on what it means to "meet competition." Boardman claims it reduced its price to maintain a two-cent per gallon differential between its price and the price of Jordan's Shell gasoline. If meeting competition is limited to matching a competitor's price, then Boardman was in violation of the UTPA. If, however, meeting competition allows a retailer to compensate for other competitive factors, such as brand names, then Boardman's actions did not violate the statute.[4] *Cf.*

---

[4]It appears that Boardman's counterclaim, alleging that Jordan Oil violated the UTPA, fails under either reading because Jordan Oil reduced its price below cost only to match Boardman's price, never to a price below Boardman. (J.A. at 69.)

*Federal Trade Commission v. Sun Oil Co.*, 371 U.S. 505, 508 (1963) ("The two-cent-per-gallon difference in price between McLean and SuperTest represented the 'normal' price differential then prevailing in the area between 'major' and 'non-major' brands of gasoline. This 'normal' differential represents the price spread which can obtain between the two types of gasoline without major competitive repercussions."); *Borden's Farm Products Co. v. Ten Eyck*, 11 F. Supp. 599, 601 (S.D.N.Y. 1935) (L. Hand, J.) ("[C]ommercially the 'advertised' brands had come in the minds of the public to mean a different grade of milk. The public may have been wrong; all milk is subject to the same tests; it may have been right; certainly it was, if the plaintiff's protestations in its advertisements are true. But right or wrong, that is what it believed, and its belief was the important thing."). We were unable to locate any controlling precedent on the interpretation of "meet competition" under section 325(A) of the UTPA. As this novel issue of state law is dispositive of the present case, it should be certified to the Supreme Court of South Carolina pursuant to Rule 228 of the South Carolina Appellate Court Rules.

## V.

In summary, we vacate the judgment of the district court and remand with instructions to determine whether there is diversity of citizenship and whether the amount in controversy exceeds the jurisdictional amount. If jurisdiction exists, the district court is directed to certify the issue concerning whether an independent retailer can "meet competition" by selling below cost at a price that is two cents below the price of the national brand competitor under the UTPA.

*VACATED AND REMANDED WITH INSTRUCTIONS*